UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL LAWRENCE LOMBARDO,

        Plaintiff,

v.

CHRISTOPHER BRYAN LEONARD and
IMS TECHNOLOGY SERVICES, INC.,

        Defendants.

## COMPLAINT

### I.    Introduction

1. The Plaintiff brings this action to recover damages and an injunction against Defendants for defamation, false light, commercial disparagement, tortious interference with contract, and respondeat superior.

### II.    Parties

1. The Plaintiff is a resident of New York State.

2. Defendant Christopher Bryan Leonard ("Mr. Leonard") is a resident of the Commonwealth of Pennsylvania and at all times relevant to this Complaint was employed by Defendant IMS Technology Services, Inc. ("IMS") as its Director of Audio. Mr. Leonard resides at 63 Andrews Court, Aston Pennsylvania 19014.

3. IMS is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business at 3055 McCann Farm Drive, Garnet Valley, Pennsylvania 19060.

1

### III. Jurisdiction and Venue

4. The Court has jurisdiction to hear this matter under 28 U.S.C. § 1332(a) because there is diversity of citizenship between the Plaintiff and the Defendants and because the amount in controversy exceeds $75,000 exclusive of interest and costs.

5. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(1) because IMS has its principal place of business in the District and Mr. Leonard resides there.

### IV. Factual Background

6. The Plaintiff is an audio engineer who specializes in sound system design. The Plaintiff has published over 50 technical articles, a full-length book, and co-authored a number of peer-reviewed papers on sound system design and related topics. The Plaintiff has presented his work for many professional industry bodies and events, including the National Association of Music Merchants, the Audio Engineering Society, the Event Safety Summit and the National Hearing Conservation Association Conference.

7. The Plaintiff serves as the technical editor for ProSoundWeb.com, one of the most-visited professional audio engineering websites, and for the trade magazine *Live Sound International*, a widely read industry publication for live sound engineers.

8. In October 2018, the Plaintiff created an audio engineering podcast called *Signal to Noise*, published via the ProSoundWeb platform. Within five years, the Signal to Noise podcast had grown to over 20,000 downloads per month and over half a million lifetime downloads, and had active Facebook page and Discord communities with thousands of members. The Discord community served as a community hub for audio engineers to network, build connections, and exchange knowledge.

9. Hannah Goodine became a member of the Signal to Noise community after meeting the Plaintiff at an Audio Engineering Society trade show in 2018. She is an active participant in the Discord group and started her own spinoff group to study audio engineering texts. According to Ms. Goodine, she "obviously benefitted from Michaels [sic] mentorship and guidance. I really appreciate everything he has contributed to the industry and how he has helped me personally."

10. Mr. Leonard has participated as a cohost on the Signal to Noise podcast since December 2019 at the Plaintiff's invitation.

11. From 2019 until Rational Acoustics LLC ("Rational Acoustics") severed its business relationship with the Plaintiff, the Plaintiff had been working on a contractual basis for Rational Acoustics, a developer of sound system analysis software as an instructor, application support specialist, educational content creator and technical writer.

12. Ms. Goodine is employed by Rational Acoustics.

13. In May 2023, Rational Acoustics offered two professional audio training classes at its office in Woodstock Connecticut, following which several Rational Acoustics staff members joined several of the students enrolled at the class for a meal at a local restaurant called The Stomping Ground on Main Street in Putnam, Connecticut. The Plaintiff was in the group, along with his partner, now fiancé, who is also an experienced audio engineer.

14. During this meal on May 10, 2023, Ms. Goodine asked the Plaintiff via text message if he and his partner were in fact in a relationship, and Plaintiff replied in the affirmative. Upon learning this, Ms. Goodine became visibly agitated and told the Plaintiff that the age difference between him and his partner made their relationship inappropriate. At the time, the Plaintiff was 35 years of age and his partner was 29 years of age. The Plaintiff

responded that his dating decisions were between him and his partner, and no business of Ms. Goodine's, and with that, the Plaintiff in his mind considered the matter closed.

15. Mr. Leonard and Ms. Goodine are friends, having met through their joint membership in the Signal to Noise community created by the Plaintiff.

16. Shortly after this exchange between the Plaintiff and Ms. Goodine, Mr. Leonard attended InfoComm 2023, one of the largest industry trade events, hosted in Orlando, Florida on June 10 – 16, 2023. Mr. Leonard's attendance at this event was a function of his professional role as Director of Audio for IMS, who paid for his trade show badge admission, transportation, and lodging.

17. IMS has an established business relationship with Rational Acoustics, as they have purchased licenses for Rational Acoustics software products and have paid for several of their employees, including Mr. Leonard, to attend Rational Acoustics training programs in recent years.

18. Mr. Leonard approached the Rational Acoustics trade show booth on the trade show floor, during business hours, and proceeded to allege in words or substance to Rational Acoustics staff that the Plaintiff had a pattern of using his status in the Signal to Noise community to groom young adult women in the audio industry into inappropriate sexual relationships. Mr. Leonard did not offer any substantiation or evidence for his claims.

19. Mr. Leonard made these damaging allegations out in the open on the tradeshow floor, during business hours, while "on the clock" for his employer, IMS.

20. Shortly thereafter, Mr. Leonard, together with Kyle Chirnside, another host who appeared on the Signal to Noise Podcast at the Plaintiff's invitation, arranged a meeting with ProSoundWeb editor-in-chief Keith Clark, during which he repeated the same damaging and

4

unfounded allegations: that the Plaintiff had a "pattern" of inappropriate sexual relationships with young adult women in the Signal to Noise community.

21. Mr. Clark asked the Plaintiff to step back from Signal to Noise while the allegations were investigated, and Plaintiff willingly complied. Mr. Leonard was then asked multiple times to provide any evidence or substantiation to their claims, and repeatedly failed to do so.

22. Following a two-month investigation, ProSoundWeb concluded that the allegations made by Mr. Leonard and Mr. Chirnside against the Plaintiff were not only false, but maliciously fabricated, and in some cases directly contradicted by the evidence and testimony obtained by ProSoundWeb.

23. Mr. Leonard also stated to Mr. Clark that he felt that young adult women in the industry couldn't make their own dating decisions and that women found Plaintiff so "mesmerizing" that they "couldn't help themselves." When Mr. Clark asked Mr. Leonard to justify his decision to make damaging, unsubstantiated allegations about the Plaintiff to his clients in the midst of a professional industry event, Mr. Leonard asserted that he was "protecting ProSoundWeb," despite the fact that ProSoundWeb was not consulted in any way and did not approve of those actions being taken.

24. Mr. Leonard was subsequently fired from ProSoundWeb. As no public explanation was given for his termination, the information that Mr. Leonard's allegations were deemed unsubstantiated has not been publicly released or circulated.

25. Because the professional audio engineering industry is an extremely close-knit community and Plaintiff had a high level of professional visibility, the knowingly false statements that Mr. Leonard made spread very readily throughout the industry.

26. Within a few weeks of InfoComm 2023's ending, the Plaintiff had lost virtually every standing business engagement he had, with the sole exception of ProSoundWeb, who knew he was innocent of the allegations.

27. On June 23, 2023, the Plaintiff received an email from an audio engineer based in Germany stating that Rational Acoustics had informed a gathering of audio instructors that the Plaintiff would no longer be working with Rational Acoustics, despite the Plaintiff having received no such notification from Rational Acoustics.

28. On June 27, 2023, the Plaintiff received a phone call from another U.S based audio instructor, Michael Curtis, stating that Rational Acoustics had informed him that they were no longer working with Plaintiff, and that they had offered Curtis a similar position, again, despite the Plaintiff having received no such notification from Rational Acoustics.

29. The same week, the Plaintiff received an email from the management of a client for whom he had worked over 40 shows, informing the Plaintiff that his position had been replaced for the upcoming tour despite the fact that the Plaintiff had done the months of preparation and pre-production work required. The Plaintiff responded to ask if they would pay him for the work he had already performed for the client, and that correspondence was ignored.

30. A loudspeaker manufacturer, with which the Plaintiff had an existing contract, and which had, just weeks earlier on June 1, informed Plaintiff that they wished to offer him a job, subsequently stopped returning or acknowledging Plaintiff's communications.

31. Prior to InfoComm 2023, the Plaintiff had multiple ongoing commitments and regular arrangements for his services and fully expected to be engaged on a growing number of additional projects.

4882-1280-4279, v. 1

32. Within weeks of InfoComm ending, every standing client but one had terminated their relationship with the Plaintiff, and stopped communicating with him. The Plaintiff (who works alone) would have generated at least $125,000 in income within the next 12 months alone from both those committed and anticipated clients.

33. Only one of the Plaintiff's existing regular clients, ProSoundWeb – the client that concluded that Mr. Leonard's accusations were maliciously false – continued to use his services.

34. On August 12, 2023, the Plaintiff reported to the Emergency Room at Rome Health Hospital in Rome New York, at the urging of his primary care physician, as the Plaintiff was exhibiting severe levels of stress, chest pressure, and elevated heart rate due to the ongoing stress and anxiety caused by the continuing fallout of reputational damage. The Plaintiff was treated for a highly elevated resting heart rate of 135 bpm in a reclined position, placed on an I.V. and a medication regimen to attempt to mitigate the effects of prolonged stress on his physical health.

35. On October 21, 2023, Adelman Law Group, PLLC sent a letter to Mr. Leonard on behalf of the Plaintiff, with the offer that if Mr. Leonard donated $10,000 to the industry advocacy group The Roadie Clinic within 10 days, the Plaintiff would forgo seeking a substantially larger amount in damages. Mr. Leonard ignored this correspondence.

36. On November 1 2023, the Plaintiff contacted the Human Resources department at IMS and spoke with the HR manager, Tracy O'Connor, informing her of Mr. Leonard's actions, and that Plaintiff intended to seek legal recourse against Mr. Leonard, and expressed frustration that Mr. Leonard had not been held accountable for his malicious actions, to which O'Connor replied "A lawsuit should help with that!" The Plaintiff then asked Ms. O'Connor to confirm whether IMS had funded Mr. Leonard's travel and admission to InfoComm 2023, at which he

defamed the Plaintiff. Ms. O'Connor replied that she would investigate internally and be back in touch. No response was received, and follow-up calls were ignored.

37. On January 15, 2024, the Plaintiff sent demand letters to Mr. Leonard and to IMS, outlining the facts of Mr. Leonard's actions and statements defaming the Plaintiff while working for IMS, and once again making an offer that Plaintiff would take no further action against either party if Mr. Leonard would retract, correct, and apologize for his false and defamatory statements. Mr. Leonard, again, ignored this correspondence.

38. IMS responded in a letter dated January 23 2024, in which it claimed that "any statements made by Mr. Leonard were in his personal capacity and unrelated to his employment with IMS," despite his statements being made at a professional event, during business hours, on the tradeshow floor, to the staff of a company with which Mr. Leonard and IMS have repeatedly engaged in business, and despite them having paid for Mr. Leonard to attend the industry event.

### COUNT I – DEFAMATION *PER SE*
### PLAINTIFF v. LEONARD

39. The Plaintiff realleges and reincorporates by reference each of the allegations in the prior paragraphs.

40. Mr. Leonard's statements to Rational Acoustics at the InfoComm 2023 trade show and to ProSoundWeb management, regarding the Plaintiff were defamatory *per se* in that Mr. Leonard falsely and recklessly stated or asserted that the Plaintiff was sexually grooming young women interested in careers as sound engineers by linking their advancement in an industry heavily dependent on personal referrals from individuals who were well-known in the industry to providing sexual favors to the Plaintiff.

41. Mr. Leonard uttered the defamatory statements.

8

42. Mr. Leonard's statements are defamatory per se because they imputed serious sexual misconduct to the Plaintiff.

43. Mr. Leonard's statements were clearly applicable to the Plaintiff, whom Mr. Leonard identified by name.

44. The recipients of Mr. Leonard's communication understood both its application to the Plaintiff and its defamatory meaning.

45. The Plaintiff has sustained special harm as a direct and proximate cause of the publication of the false and inflammatory statements made by Mr. Leonard, including but not limited to, loss of income, irreparable reputation harm, and loss of standing both in the professional community and in the community at large.

46. Moreover, as a direct and proximate result of Mr. Leonard's defamatory statements, the Plaintiff has suffered, and continues to suffer, from depression, insomnia and anxiety.

47. Mr. Leonard was not privileged to make these false and inflammatory statements concerning the Plaintiff.

COUNT II – DEFAMATION
PLAINTIFF v. LEONARD

48. The Plaintiff realleges and reincorporates by reference each of the allegations of the prior paragraphs.

49. Mr. Leonard's statements to Rational Acoustics at the InfoComm 2023 trade show and to ProSoundWeb management, regarding the Plaintiff were defamatory in that Mr. Leonard with actual malice falsely stated or asserted that the Plaintiff was sexually grooming young adult women interested in careers as sound engineers by offering to mentor them and then linking that mentoring and thus their advancement in an industry heavily dependent on personal

referrals from individuals who were well-known in the industry to providing sexual favors to the Plaintiff.

50. Mr. Leonard's statements were defamatory in that they tended to harm the Plaintiff's reputation by lowering him in the estimation of the community and deter third persons from associating or dealing with him.

51. Mr. Leonard uttered the defamatory statements.

52. Mr. Leonard's statements were clearly applicable to the Plaintiff, whom Mr. Leonard identified by name.

53. The recipients of Mr. Leonard's communication understood both its application to the Plaintiff and its defamatory meaning.

54. The Plaintiff has sustained special harm as a direct and proximate cause of the publication of the false and inflammatory statements made by Mr. Leonard, including but not limited to, loss of income, irreparable reputation harm, and loss of standing both in the professional community and in the community at large.

55. Moreover, as a direct and proximate result of Mr. Leonard's defamatory statements, the Plaintiff has suffered, and continues to suffer, from depression, insomnia and anxiety.

56. Mr. Leonard was not privileged to make these false and inflammatory statements concerning Mr. Lombardo.

COUNT III – DEFAMATION BY IMPLICATION<br><u>PLAINTIFF v. LEONARD</u>

57. The Plaintiff realleges and reincorporates by reference each of the prior paragraphs.

58. The statements that Mr. Leonard uttered to Rational Acoustics and to others concerning his allegations concerning the Plaintiff's relationship with young adult women were defamatory by innuendo in that those statements are reasonably suspectable to defamatory meaning, namely, that the Plaintiff predatorially takes advantage of his status as the mentor in his mentor/mentee relationship with young women.

59. Mr. Leonard's false and inflammatory statements regarding the Plaintiff's alleged sexual behavior have been applied to him, and any person hearing Mr. Leonard's false statements concerning the Plaintiff understood the defamatory meaning of the false and inflammatory statements concerning the Plaintiff's professional conduct.

60. The Plaintiff has sustained special harm as a direct and proximate cause of the publication of the false and inflammatory statements made by Mr. Leonard, including but not limited to, loss of income, irreparable reputation harm, and loss of standing both in the professional community and in the community at large.

61. Moreover, as a direct and proximate result of Mr. Leonard's defamatory statements, the Plaintiff has suffered, and continues to suffer, from depression, insomnia and anxiety.

62. Mr. Leonard was not privileged to make these false and inflammatory statements concerning the Plaintiff.

COUNT IV – FALSE LIGHT
PLAINTIFF v. LEONARD

63. The Plaintiff realleges and reincorporates by reference each of the allegations of the prior paragraphs.

64. Mr. Leonard falsely communicated and publicized to third parties that Plaintiff was engaged in the sexual grooming of young adult women under the guise of providing mentorship in the sound engineering industry to them.

65. The light in which Mr. Leonard's statements cast the Plaintiff is highly offensive to a reasonable person.

66. Mr. Leonard knew of or acted in reckless disregard as to the falsity of the matters he publicized and the false light in which the Plaintiff would be placed.

67. As a result of Mr. Leonard's conduct, the Plaintiff was placed in a false light and thus Mr. Leonard is subject to the Plaintiff for the invasion of his privacy.

68. As a direct and proximate result of Mr. Leonard's statements, the Plaintiff has sustained loss of income, irreparable reputation harm, and loss of standing both in the professional community and in the community at large, and has suffered, and continues to suffer, from depression, insomnia, and anxiety.

### COUNT V – COMMERCIAL DISPARAGEMENT
### PLAINTIFF v. LEONARD

69. The Plaintiff realleges and reincorporates by reference each of the allegations of the prior paragraphs.

70. The Plaintiff runs his own company that provides live sound mixing, sound system design and tuning, education, training, and technical writing and editing services to production companies, publications, and manufacturers in the audio industry.

71. Mr. Leonard made disparaging statements concerning the Plaintiff's reputation that were false, and these false statements severely impacted the Plaintiff's business.

72. Mr. Leonard either made the disparaging statements in order to cause financial loss to the Plaintiff or reasonably should have recognized that the making of those disparaging statements would result in a financial loss for the Plaintiff, by directing his statements towards parties with whom Plaintiff had an active professional relationship.

73. The Plaintiff, in fact, suffered financial loss.

74. Mr. Leonard either knew that the statements were false or acted in reckless disregard for their truth or falsity.

COUNT VI – TORTIOUS INTERFERENCE<br>WITH PERFORMANCE OF CONTRACTS<br><u>PLAINTIFF v. LEONARD</u>

75. The Plaintiff realleges and reincorporates by reference each of the allegations of the prior paragraphs.

76. Prior to the time that Mr. Leonard defamed the Plaintiff, the Plaintiff had valid contracts and/or agreements to provide professional services for Rational Acoustics and multiple other professional parties.

77. As a result of their professional and personal relationships, Mr. Leonard knew that the Plaintiff had at least some of these contractual relationships.

78. Mr. Leonard intentionally and improperly interfered with the performance of these contracts by inducing or otherwise causing each of the counterparties not to perform their contract with the Plaintiff.

79. As a direct result of Mr. Leonard's intentional and improper actions, the counterparties to those contracts terminated their relationship with the Plaintiff, and as a result of those terminations – terminations directly attributable to Mr. Leonard's intentional and improper actions – the Plaintiff suffered significant financial injury.

## COUNT VII – TORTIOUS INTERFERENCE WITH
## PROSPECTIVE CONTRACTUAL RELATIONS
## PLAINTIFF v. LEONARD

80. The Plaintiff realleges and reincorporates by reference each of the allegations of the prior paragraphs.

81. Prior to the time that Mr. Leonard defamed the Plaintiff and for some time thereafter, the Plaintiff was in discussions with several third parties to provide or continue to provide sound engineering services.

82. The Plaintiff and these third parties had entered, or were reasonably likely to enter into a contractual relationship for the provision of sound engineering services.

83. As a direct result of the defamatory statements he made against the Plaintiff, Mr. Leonard caused these third parties not to enter into contractual relationships with the Plaintiff or he prevented the Plaintiff from entering into those relationships.

84. Mr. Leonard's interference with respect to the Plaintiff's prospective contracts was both intentional and improper.

85. As a direct result of Mr. Leonard's conduct, the Plaintiff suffered significant financial injury.

86. As a result of Mr. Leonard's defamatory statements and actions, the Plaintiff has suffered irreparable harm both to his professional reputation and his ability to obtain work as a sound engineer. Moreover, the harm caused by Mr. Leonard is ongoing.

87. The remedies available at law are inadequate to compensate the Plaintiff for the injuries that he has suffered as a result of Mr. Leonard defaming him.

88. A permanent injunction is warranted here upon consideration of the balance of hardships as between the Plaintiff and Mr. Leonard.

## COUNT VIII – RESPONDEAT SUPERIOR
## PLAINTIFF v. IMS

89. The Plaintiff realleges and reincorporates by reference each of the allegations of the prior paragraphs.

90. IMS is liable for all common law torts that its employees commit in the scope of their employment.

91. At times discussed in and relevant to the Plaintiff's claims against Mr. Leonard, Mr. Leonard was an employee of IMS.

92. At times discussed in and relevant to the Plaintiff's claims against Mr. Leonard, Mr. Leonard was acting within the scope of his employment.

93. To the extent Mr. Leonard is found liable to the Plaintiff on any preceding counts, IMS is liable to the same extent as is Mr. Leonard.

**WHEREFORE**, the Plaintiff respectfully requests that the Court grant the following relief:

As against Mr. Leonard:

(a) As to Count I (Defamation *Per Se*), presumed damages in an amount in excess of $75,000, together with punitive damages;

(b) As to Counts II through VII, actual damages in an amount in excess of $75,000, together with punitive damages;

(c) A permanent injunction enjoining Mr. Leonard from making any further defamatory statements against the Plaintiff;

(d) The costs of this action, together with such other relief as the Court may deem just and proper here.

As against IMS:

15

4882-1280-4279, v. 1

(e) As to Count VIII, actual damages in an amount in excess of $75,000, together with punitive damages ; and

(f) The costs of this action, together with such other relief as the Court may deem just and proper here.

Dated: April 23, 2024                             Respectfully submitted,


*Michael Lombardo*
Michael Lombardo, Pro Se
45 Laurel Trail
Monroe NY 10950
Telephone: (315) 225-5429
Email: iamthemichaellawrence@gmail.com

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Michael Lawrence Lombardo

### DEFENDANTS
Christopher Bryan Leonard and IMS Technology Services, INC

**(b)** County of Residence of First Listed Plaintiff: Orange County NY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Delaware County PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*: Pro Se

Attorneys *(If Known)*:

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [x] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [x] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**TORTS — PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [x] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**TORTS — PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS — Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

Click here for: Nature of Suit Code Descriptions.

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(a) for jurisditcion.

Brief description of cause:
Action based on defamation, defamation per se, false light, commercial disparagement, and tortious interference with performance of contracts

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** In Excess of $150,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes  [x] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 45 Laurel Trail, Monroe NY 10950

Address of Defendant: 63 Andrews Ct, Aston PA, 19014 and 3055 McCann Farm Drive, Garnet Valley PA 19060

Place of Accident, Incident or Transaction: Orlando, FL and electronic correspondance

*RELATED CASE IF ANY:*
Case Number:_____ Judge:_____ Date Terminated_____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes [ ]  No [x]
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit Pending or within one year previously terminated action in this court?   Yes [ ]  No [x]
3. Does this case involve the validity or infringement of a patent already in suit or any earlier Numbered case pending or within one year previously terminated action of this court?   Yes [ ]  No [x]
4. Is this case a second or successive habeas corpus, social security appeal, or pro se case filed by the same individual?   Yes [ ]  No [x]

I certify that, to my knowledge, the within case [ ] **is** / [x] **is not** related to any now pending or within one year previously terminated action in this court except as note above.

DATE: _____   _____/s/_____   Pro Se Plaintiff
                        Attorney-at-Law *(Must sign above)*   Attorney I.D. # *(if applicable)*

---

**Civil** (Place a √ in one category only)

A. *Federal Question Cases:*
1. Indemnity Contract, Marine Contract, and All Other Contracts
2. FELA
3. Jones Act-Personal Injury
4. Antitrust
5. Wage and Hour Class Action/Collective Action
6. Patent
7. Copyright/Trademark
8. Employment
9. Labor-Management Relations
10. Civil Rights
11. Habeas Corpus
12. Securities Cases
13. Social Security Review Cases
14. Qui Tam Cases
15. All Other Federal Question Cases. *(Please specify)*:_____

B. *Diversity Jurisdiction Cases:*
1. Insurance Contract and Other Contracts
2. Airplane Personal Injury
3. [x] Assault, Defamation
4. Marine Personal Injury
5. Motor Vehicle Personal Injury
6. Other Personal Injury *(Please specify)*:_____
7. Products Liability
8. All Other Diversity Cases: *(Please specify)*_____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, Michael L Lombardo, counsel of record *or* pro se plaintiff, do hereby certify:

[x]  Pursuant to Local Civil Rule 53.2 § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[x]  Relief other than monetary damages is sought.

DATE: 4-23-2024   _____/s/_____   Pro Se Plaintiff
                    Attorney-at-Law *(Sign here if applicable)*   Attorney ID # *(if applicable)*

NOTE: A trial de novo will be a jury only if there has been compliance with F.R.C.P. 38.