IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL LAWRENCE LOMBARDO, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No. 2:24-cv-01711-KBH |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER BRYAN LEONARD and | : | |
| IMS TECHNOLOGY SERVICES, INC., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CHRISTOPHER BRYAN LEONARD'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**I.     INTRODUCTION**

Plaintiff Michael Lawrence Lombardo ("Lombardo") seeks to hold Defendant Christopher Bryan Leonard ("Leonard") liable for a myriad of tort claims based on three alleged statements made by Leonard to a few individuals. These statements related to Leonard's opinion regarding Lombardo's sexual relationships with young adult women in the local audio industry. Lombardo does not allege that Leonard accused him of any illegal conduct. The statements were non-defamatory statements of opinion that are not provably false, and not sufficiently publicized to give rise to a false light claim, warranting dismissal of his claims.

Each of Lombardo's claims stems from Leonard's alleged defamatory statements to unidentified Rational Acoustic employees, and an individual at ProSoundWeb, two companies with which Lombardo allegedly has business relationships. Lombardo attempts to refashion his defamation claims into claims for tortious interference with contractual relations and commercial disparagement. However, he fails to plead that Leonard was aware of his alleged contractual relations; and claims based on damage to professional reputation are appropriately asserted as a

defamation claim, rather than a commercial disparagement claim. Lombardo also requests a permanent injunction against Leonard related to his alleged defamatory statements, which the Third Circuit has held is impermissible.

In light of the foregoing, and the reasons stated in detail herein, Lombardo's Amended Complaint should be dismissed with prejudice.

## II.     FACTUAL BACKGROUND

Lombardo works as "an audio engineer who specializes in sound system design," and serves as the Technical Editor for audio engineering website, ProSoundWeb.com and trade magazine, Live Sound International. (ECF Doc. No. 12 ¶¶ 6, 7.) In October 2018, Lombardo created an audio engineering podcast called Signal to Noise, published through ProSoundWeb. (*Id.* at ¶ 8.) Lombardo alleges that "[w]ithin five years, the Signal to Noise podcast had grown to over 20,000 downloads per month and over half a million lifetime downloads." (*Id.*) Leonard participated as a cohost on the Signal to Noise podcast beginning in December 2019. (*Id.* at ¶ 10.) From 2019, until June 2023, Lombardo worked as an independent contractor for Rational Acoustics, a sound system analysis software developer, in various capacities. (*Id.* at ¶ 11.)

Lombardo alleges that from June 10 – 16, 2023, Leonard attended InfoComm 2023, an industry trade event in Orlando, Florida, in his capacity as Director of Audio for Defendant IMS Technology Services, Inc. ("IMS"). (*Id.* at ¶ 16.) During the trade event, Leonard allegedly "asserted to Rational Acoustics employees in words or substance" that Lombardo "had a pattern of using his status in the *Signal to Noise* community and his prominence in the audio industry generally to sexually exploit young adult women who are trying to enter the audio industry or advance in it." (ECF Doc. No. 12 ¶ 17.) Specifically, Leonard allegedly stated that Lombardo

2

conditioned the women's success in the audio industry on engaging in a sexual relationship with him. (*Id.*).

Shortly thereafter, during a meeting with ProSoundWeb's Editor-in-Chief Keith Clark ("Clark"), Leonard and another Signal to Noise podcast host, Kyle Chirnside ("Chirnside"), allegedly repeated Leonard's statement that Lombardo "had a 'pattern' of inappropriate sexual relationships with young adult women in the Signal to Noise community, and that [Lombardo] should be removed from the industry" (*Id.* at ¶ 19.) Lombardo further alleges that Leonard stated to Clark that "he felt that young adult women in the industry couldn't make their own dating decisions and that women found Plaintiff so 'mesmerizing' that they 'couldn't help themselves.'" (*Id.* at ¶ 22.)

According to Lombardo, Leonard's alleged statements "became widely disseminated very quickly, raging through the very tight-knit audio community." (*Id.* at ¶ 18.) As a result, Lombardo alleges that in June 2023, he lost existing contractual relationships with Rational Acoustics, Rick Sands Entertainment Group ("RSE"), and Meyer Sound. (*Id.* at ¶¶ 23 - 29.) Lombardo further alleges that Meyer Sound "wanted the Plaintiff to provide further services for additional future events on a regular basis, and encouraged Plaintiff to consider contracted employment status." (*Id.* at ¶ 28.)

### III. QUESTIONS PRESENTED

A. Whether Lombardo's defamation claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.

*Suggested Answer: Yes.*

B. Whether Lombardo's defamation *per se* claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.

*Suggested Answer: Yes.*

      C.      Whether Lombardo's defamation by implication claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.

*Suggested Answer: Yes.*

      D.      Whether Lombardo's false light claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.

*Suggested Answer: Yes.*

      E.      Whether Lombardo's commercial disparagement claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.

*Suggested Answer: Yes.*

      F.      Whether Lombardo's claims of tortious interference with actual or prospective contractual relations should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.

*Suggested Answer: Yes.*

      G.      Whether Lombardo's request for a permanent injunction should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.

*Suggested Answer: Yes.*

**IV.**      <u>**PROCEDURAL HISTORY**</u>

      On April 23, 2024, Lombardo filed the Complaint in this matter. On May 28, 2024, IMS filed a Motion to Dismiss the Complaint. (*See* ECF Doc. No. 11.) On May 21, 2024, Leonard and Lombardo entered into a Stipulation extending the deadline for Lombardo to respond to the Complaint until June 11, 2024, which this Court approved on May 24, 2024. (*See* ECF Doc. No.

10.) On June 8, 2024, Lombardo filed both a response to IMS' Motion to Dismiss, as well as the Amended Complaint. (*See* ECF Doc. Nos. 13 and 12.)

V.  **ARGUMENT**

    A.  **Standard**

In considering a Motion to Dismiss under Rule 12(b)(6),

> a district court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. 'Threadbare' recitations of the elements of a claim supported only by 'conclusory statements' will not suffice. Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference, and the Court is not bound to accept as true a legal conclusion couched as a factual allegation.

*State Farm Mut. Auto. Ins.. Co. v. Stavropolskiy*, No. 15-CV-5929, 2016 WL 627257, at *1 (E.D. Pa. Feb. 17, 2016).

For the reasons stated in detail *infra,* Lombardo's claims fail to meet the above standard, and should therefore be dismissed.

    B.  **The Complaint Fails to State a Claim for Defamation.**

"Under Pennsylvania law, defamation is the tort of detracting from a person's reputation or injuring a person's character by false and malicious statements." *Jungclaus v. Waverly Heights*, Ltd., No. CV 17-4462, 2018 WL 1705961, at *3 (E.D. Pa. Apr. 9, 2018).

> There are seven elements of defamation under Pennsylvania law: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5)

5

> the understanding by the recipient of the intention to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion.

*Id.*

### 1. The Alleged Statements are Not Capable of Defamatory Meaning.

"The question of whether a statement is defamatory is a threshold issue to be determined by the court. The plaintiff bears the burden of making this showing." *Gorman v. Shpetrik*, No. CV 20-4759, 2022 WL 717075, at *5 (E.D. Pa. Mar. 10, 2022).

Lombardo bases his defamation claims on the following alleged statements made by Leonard:

- Leonard "asserted to Rational Acoustics employees in words or substance" that Lombardo "had a pattern of using his status in the Signal to Noise community and his prominence in the audio industry generally to sexually exploit young adult women who are trying to enter the audio industry or advance in it," to condition the women's success on engaging in a sexual relationship with him. (ECF Doc. No. 12 ¶ 17.)

- During a meeting with Clark, Leonard and Chirnside allegedly repeated Leonard's statement that Lombardo "had a 'pattern' of inappropriate sexual relationships with young adult women in the Signal to Noise community, and that [Lombardo] should be 'removed from the industry.'" (*Id*. at ¶ 19.)

- Leonard further stated to Clark that "he felt that young adult women in the industry couldn't make their own dating decisions and that women found Plaintiff so 'mesmerizing' that they 'couldn't help themselves.'" (*Id*. at ¶ 22.)

Lombardo is a public figure, based on his allegation that he was a host of a podcast that "had grown to over 20,000 downloads per month and over half a million lifetime downloads."

*See Olszewski v. Sinclair Broad. Grp., Inc.*, 62 Pa. D. & C.4th 236, 237 (Com. Pl. 2003) (noting the defendant who was the host of a radio talk show on a Wilkes-Barre radio station to be a public figure). In addition, Leonard's alleged statements related to a matter of public concern, namely, Lombardo using his status in the industry to groom young adult women he mentored. *Amor v. Conover*, 635 F. Supp. 3d 363, 368–70 (E.D. Pa. 2022) (noting "[c]ourts in our circuit have applied this standard to hold allegations of sexual misconduct constitute a public controversy even when the controversy is relevant to only residents of the local community," and that "the issue of sexual misconduct in the workplace….surely falls within the ambit of public controversy.")

> When raised by a public figure concerning statements bearing on a matter of public concern, claims for defamation are subject to an onerous standard of proof, owing to considerations of free speech that inhere to any claim that implicates the First Amendment. Consequently, our Courts' First Amendment jurisprudence makes clear that statements on matters of public concern must be provable as false before there can be liability under state defamation law…. Moreover, a statement of opinion relating to matters of public concern that does not contain a provably false connotation will receive full constitutional protection.

*Smith v. Main Line Animal Rescue, Inc.*, No. 1132 MDA 2018, 2019 WL 4464814, at *5 (Pa. Super. Ct. Sept. 18, 2019).

Leonard's alleged statement that "he *felt* that young adult women in the industry couldn't make their own dating decisions and that women found Plaintiff so 'mesmerizing' that they 'couldn't help themselves,'" is clearly a statement of opinion that does not contain a provably false connotation. *See Mallory v. S & S Publishers*, 260 F. Supp. 3d 453, 461 (E.D. Pa. 2017), *aff'd sub nom. Mallory v. Simon & Schuster, Inc.*, 728 F. App'x 132 (3d Cir. 2018) (holding the biography's reference to the plaintiff as a "star seducer," is a "non-actionable opinion")

7

Leonard's other alleged comments relating to Lombardo's pattern of inappropriate sexual relationships with young adult women in the Signal to Noise community, are also statements of opinion that do not contain provably false connotations. In *Nothstein v. USA Cycling*, 499 F. Supp. 3d 101 (E.D. Pa. 2020), the alleged defamatory statement at issue was that the defendant "gathered enough specificity to allege a policy had been violated" by the plaintiff in connection with alleged sexual misconduct. *Id.* at 122–23. The court held that the statement was "not provable as false because finding 'enough specificity to allege a policy had been violated' is a subjective metric that cannot be objectively evaluated for its truth." *Id.* at 125.

Like the statement in *Nothstein,* whether Lombardo had a pattern of using his status in the community to cause young adult women in the audio industry to engage in sexual relationships with him, is a subjective opinion that is not provable. Whether Lombardo "used his status" in the community and "prominence in the audio industry" to cause women to engage in sexual relationships with him, and whether he had a "pattern" of doing so, are subjective beliefs that are not provable. *See Monge v. Univ. of Pennsylvania,* No. CV 22-2942, 2023 WL 2391004, at *5 (E.D. Pa. Mar. 7, 2023) (holding statements that the plaintiff showed "unfathomable heartlessness and disrespect" and "ethical indifference" related to her treatment of deceased individuals' remains, were "non-actionable pure opinions because they express…subjective belief").

### 2. Lombardo Omits the Recipients of the Alleged Statement Leonard Made at InfoComm 2023.

Lombardo merely alleges that Leonard made the statement at the Rational Acoustics booth at InfoComm 2023, "to Rational Acoustics employees." (ECF Doc. No. 12 ¶ 17.) Lombardo fails to identify the employees who were the alleged recipients of the statement; therefore, he fails to "connect the defamatory statements to his failure to obtain a job, harm to

8

his reputation, or any other claimed injury." *Turk v. Salisbury Behav. Health, Inc.*, No. 09-CV-6181, 2010 WL 1718268, at *4 (E.D. Pa. Apr. 27, 2010).

While Lombardo does specify that Leonard later repeated the statement to Clark at ProSoundWeb, Lombardo explicitly alleges that "[w]ithin several weeks of InfoComm 2023 ending, every one of Plaintiff's standing clients except ProSoundWeb had ended its working relationship with him." (ECF Doc. No. 12 ¶¶ 29.) Therefore, Lombardo's defamation claim fails, due to his lack of damages resulting from Leonard's alleged statements to Clark. *See Nothstein v. USA Cycling*, 499 F. Supp. 3d 101, 122 (E.D. Pa. 2020) (distinguishing between claims of defamation which requires proof of special damages such as out-of-pocket expenses, and claims of defamation *per se* requiring only proof of general damages").

C.  **The Complaint Fails to State a Claim for Defamation *Per Se*.**

Lombardo alleges that "Leonard's statements are defamatory per se because they imputed serious sexual misconduct to the Plaintiff." (ECF Doc. No. 12 ¶ 38.) However, the alleged defamatory statements do not give rise to statements concerning "serious sexual misconduct."

In defamation "cases where special damages cannot be shown, courts have created an exception for statements considered defamation *per se*. Defamation *per se* encompasses statements concerning four categories: (1) a criminal offense; (2) a loathsome disease; (3) business misconduct; or (4) serious sexual misconduct." *Jungclaus*, No. CV 17-4462, 2018 WL 1705961, at *3. Pennsylvania follows the Restatement (Second) of Torts for guidance on defamation *per se* claims, which interprets the meaning of "serious sexual misconduct" as follows:

> The rule stated in this Section has been generally applied to any statement that imputes any form of unchastity to a woman, married or single, irrespective of whether the conduct charged constitutes a criminal offense. The rule applies to a statement charging a

9

> woman with specific acts of adultery, fornication or any other form of sexual intercourse with a man other than her husband, as well as to general charges of unchaste conduct. It does not apply to mere imputations of immodesty that do not imply unchaste conduct.

*Goldfarb v. Kalodimos*, 539 F. Supp. 3d 435, 462, n.12 (E.D. Pa. 2021) (quoting Restatement (Second) of Torts § 574 (1977)).

"Serious sexual misconduct" does not include sexual conduct between consenting adults, as referenced in the alleged defamatory statements. *Cf., Rose v. Dowd,* 265 F.Supp.3d 525, 533 (E.D.Pa. 2017) (holding statement that the plaintiff "ran young girls for him down at spring training, ages 12 to 14 ... so that's statutory rape every time you do that" was capable of a defamatory meaning); *Wagner v. Tuscarora School Dist.*, 2005 WL 2319141, *5-6 (M.D. Pa. Sept. 21, 2005) (holding a statement that a high school band director sexually harassed students stated a claim for defamation *per se*).

### D. The Complaint Fails to State a Claim for Defamation by Implication.

"Pennsylvania courts recognize that a claim for defamation may exist where the words utilized themselves are not defamatory in nature, however, the context in which these statements are issued creates a defamatory implication, i.e., defamation by innuendo." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010).

Lombardo's claim fails because the context that he ascribes to the alleged statements, namely, that he "predatorily takes advantage of his status as the mentor in his mentor/mentee relationship with young women," (*see* ECF Doc. No. 12 ¶ 56) is also pure opinion, and therefore does not constitute defamation by implication. *See Monge*, No. CV 22-2942, 2023 WL 2391004, at *5 ("To the extent the statement implies 'unethical and illegal racially motivated animus' on Dr. Monge's part, this implication is not actionable because it is a pure opinion.").

10

### E. The Complaint Fails to State a Claim for False Light.

"In order to state a claim of false-light invasion of privacy under Pennsylvania law, a plaintiff must allege (1) publicity, (2) given to private facts, (3) which could be highly offensive to a reasonable person, and (4) which are not of legitimate concern to the public." *Schatzberg v. State Farm Mut. Auto. Ins. Co.*, 877 F. Supp. 2d 232, 245 (E.D. Pa. 2012).

> 'Publicity,' for the purposes of a false light invasion of privacy claim, requires more than the 'publication' required to sustain a claim for defamation. Rather, it requires that the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. *Vogel v. W.T. Grant Co.*, 458 Pa. 124, 327 A.2d 133, 137 (1974) ('The disclosure … must be a public disclosure, and not a private one; there must be, in other words, publicity. It is an invasion of his rights to publish in a newspaper that the plaintiff did not pay his debts, or to post a notice to that effect in a window on the public street, or to cry it aloud in the highway, but not to communicate the fact to the plaintiff's employer, or to any other individual, or even to a small group….') (quoting W. Prosser, Handbook of the Law of Torts § 117 at 810–12 (4th ed.1971)).

*Id.* at 245.

Lombardo alleges that Leonard placed him in a false light because he "falsely communicated and publicized to third parties that the Plaintiff was engaged in sexual grooming of young adult women under the guise of providing mentorship in the sound engineering industry to them." (ECF Doc. No. 12 ¶ 63.) Giving Lombardo the benefit of the doubt that the "third parties" were the Rational Acoustics employees at InfoComm 2023 and Clark, he fails to plead sufficient publicity to sustain a false light claim. In *Schatzberg,* the plaintiff alleged that the defendant spread false information about him "to particular individuals in the medical and legal communities via letter and phone call." *Schatzberg,* 877 F. Supp. 2d at 245. Specifically, the plaintiff alleged that the defendant told the plaintiff's former employee and "several other

11

employees" of the plaintiff via telephone, that the defendant was investigating the plaintiff for fraud. *Id.* The *Schatzberg* Court concluded "that these allegations fall short of constituting the publicity necessary to establish a false light invasion of privacy claim," in light of the nature of the "alleged communications—phone calls, as opposed to media publication—and the vague allegation about the number of persons [the defendant] contacted." *Id.* at 246.

F. **The Complaint Fails to State a Claim for Commercial Disparagement.**

To state a claim of commercial disparagement, Lombardo must allege that: (1) Leonard "published a false and disparaging statement concerning [Lombardo's] business," (2) Leonard's intent was to cause Lombardo pecuniary loss, or that Leonard "reasonably should have known that publication would cause [Lombardo] pecuniary loss, (3) actual pecuniary loss by" Lombardo, and (4) that Leonard "knew that the statement was false or acted in reckless disregard to its truth." *Watson v. Abington Twp.*, No. CIV.A. 01-5501, 2002 WL 32351171, at *8 (E.D. Pa. Aug. 15, 2002).

> *A commercial disparagement action is meant to compensate a vendor for pecuniary loss suffered because statements attacking the quality of its goods have reduced their marketability*. The Third Circuit has distinguished between defamation and commercial disparagement claims, noting that a claim for defamation lies where the defamatory statement imputes to the corporation fraud, deceit, dishonesty, or reprehensible conduct, while a claim for commercial disparagement lies where the publication on its face is directed against the goods or products of a corporate vendor.

*The Knit With v. Knitting Fever, Inc.*, No. CIV.A. 08-4221, 2010 WL 3792200, at *7 (E.D. Pa. Sept. 28, 2010) (emphasis added). *See also, U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 924 (3d Cir. 1990) (distinguishing defamation from commercial disparagement, noting "defamation is meant protect an entity's interest in character and reputation").

Here, Lombardo alleges as the basis of his commercial disparagement claim, that "Leonard made disparaging statements concerning the Plaintiff's reputation that were false, and these false statements severely impacted the Plaintiff's business." (ECF Doc. No. 12 ¶ 71.) This is the exact allegation that distinguishes a defamation claim from a commercial disparagement claim, warranting dismissal. *See The Knit With,* 2010 WL 3792200, at *7; *U.S. Healthcare, Inc.*, 898 F.2d at 924.

### G. The Complaint Fails to State Claims for Tortious Interference with Actual or Prospective Contractual Relations.

To state a claim of

> tortious interference with an existing or prospective contract under Pennsylvania law, a plaintiff must prove four elements: (1) the existence of a contractual relationship or prospective contractual relationship between the plaintiff and another party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship or preventing the relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct.

*DelphX Corp. v. Fondren*, 600 F. Supp. 3d 540, 550 (E.D. Pa. 2022).

It is axiomatic that "[f]or a defendant to have specific intent to harm a contractual relationship, it must first have knowledge of that contractual relationship. Actual knowledge of the contract with which a defendant supposedly interfered is a prerequisite to making out a claim for tortious interference." *Acclaim Sys., Inc. v. Infosys, Ltd.*, 679 F. App'x 207, 211 (3d Cir. 2017). "Moreover, that knowledge must be specific to the particular contractual right upon which the defendant infringes. . . . *General knowledge of a business relationship is not sufficient*; the defendant must have specific knowledge of the contract right upon which his actions infringe." *Id.* (emphasis added) (quoting *Gianacopoulos v. MOS Design, Inc.*, No. CIV.A. 3:05–2417, 2008 WL 1774094, at *6 (M.D. Pa. Apr. 16, 2008)).

13

Here, Lombardo fails to allege that Leonard had knowledge of his alleged existing contracts with Rational Acoustics, RSE, or Meyer Sound, or his alleged prospective contract with Meyer Sound, which is fatal to his claims. If Leonard was unaware of Lombardo's alleged contractual relations, he could not have made the alleged statements with the purpose of interfering with them. *See PeriRx, Inc. v. Regents of Univ. of California,* No. 2:20-CV-02212-JDW, 2020 WL 12833950, at *8 (E.D. Pa. Dec. 3, 2020), *aff'd sub nom.,* 2023 WL 1267173 (3d Cir. Jan. 31, 2023) (holding "PeriRx has failed to state a claim for intentional or negligent interference with a prospective economic advantage against these two defendants because it has not alleged that either defendant knew about PeriRx's negotiations with Hoffman LaRoche and made the alleged misrepresentation to disrupt or halt those negotiations").

Furthermore, Lombardo's own allegation that "Leonard said what he said about the Plaintiff at InfoComm and to ProSoundWeb for only one reason: to destroy the Plaintiff's professional reputation" (ECF Doc. No. 12 ¶ 23) emphasizes Lombardo's attempt to refashion his defamation claims into tortious interference claims. He fails to plead that Leonard made the alleged statements with the specific intent of interfering with his contractual relations.

### H. Lombardo's Request for a Permanent Injunction is Impermissible Under Pennsylvania Law.

Lombardo requests a permanent injunction against Leonard due to the alleged "irreparable harm" he has suffered "[a]s a result of….Leonard's defamatory statements and actions." (ECF Doc. No. 12 ¶ 82.)

The Third Circuit "adhere[s] to the traditional, common law principle that equity will not enjoin a defamation, especially when a party has an adequate remedy at law in the form of money damages." *Graboff v. Am. Ass'n of Orthopaedic Surgeons*, No. CIV.A. 12-5491, 2013 WL

14

1875819, at *5 (E.D. Pa. May 3, 2013), *aff'd*, 559 F. App'x 191 (3d Cir. 2014) (citing *Kramer Kramer v. Thompson*, 947 F.2d 666 (3d Cir.1991)). In *Graboff,* the plaintiff sought declaratory and compensatory relief for harm he allegedly suffered from the failure of the defendant to remove an article published on its website about the plaintiff. *Id.* at *3. The *Graboff* Court granted the defendant's motion to dismiss the plaintiff's request for an injunction related to the defendant's continued publication of the article, as impermissible. *Id.* at *5.

In light of the foregoing, Lombardo's request for a permanent injunction must be dismissed, as it is impermissible under Pennsylvania law. Notwithstanding, "an injunction is a remedy rather than a cause of action," *Chruby v. Kowaleski*, 534 F. App'x 156, n.2 (3d Cir. 2013) (citing *Birdman v. Off. of the Governor*, 677 F.3d 167, 172 (3d Cir. 2012)), warranting dismissal on that basis as well.

## VI.   CONCLUSION

For the foregoing reasons, Defendant Christopher Bryan Leonard respectfully requests this Honorable Court grant his Motion to Dismiss Plaintiff's Amended Complaint, and dismiss the Amended Complaint with prejudice.

Respectfully submitted on this 24th day of June 2024,

**KAUFMAN DOLOWICH LLP**

*/s/   Gregory S. Hyman*
Gregory S. Hyman, Esq.
Jennifer L. Prior, Esq.
One Liberty Place
1650 Market Street, Suite 4800
Philadelphia, PA 19103
T: (484) 841-7106
ghyman@kaufmandolowich.com
jprior@kaufmandolowich.com
*Counsel for Defendant Christopher Bryan Leonard*

## **CERTIFICATE OF SERVICE**

I, Gregory S. Hyman, Esq. hereby certify that on this 21st day of June 2024, I caused a true and correct copy of Defendant Christopher Bryan Leonard's Motion to Dismiss Plaintiff's Amended Complaint to be served on the below individuals via ECF:

Michael Lawrence Lombardo
45 Laurel Trail
Monroe, NY 10950
iamthemichaellawrence@gmail.com
*Pro se Plaintiff*

Alexander Nemiroff, Esq.
GORDON & REES, LLP
Three Logan Square
1717 Arch St.
Suite 610
Philadelphia, PA 19103
anemiroff@gordonrees.com
*Counsel for Defendant IMS Technology Services, Inc.*

**KAUFMAN DOLOWICH LLP**

*/s/     Gregory S. Hyman*
Gregory S. Hyman