IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL LAWRENCE LOMBARDO, | : | |
| | : | CIVIL No. 2:24-cv-01711-KBH |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Honorable Kelley Brisbon Hodge |
| CHRISTOPHER BRYAN LEONARD | : | |
| | : | |
| and | : | |
| | : | |
| IMS TECHNOLOGY SERVICES, INC., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT IMS TECHNOLOGY SERVICES, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

On April 29, 2024, Plaintiff Michael Lawrence Lombardo ("Plaintiff") filed a lawsuit alleging defamation *per se* (Count I), defamation (Count II), defamation by implication (Count III), false light (Count IV), commercial disparagement (Count V), tortious interference with performance of contracts (Count VI), and tortious interference with prospective contractual relations (Count VII), against Defendant Christopher Bryan Leonard ("Leonard") and alleging solely "respondeat superior" ("Count VIII) against Defendant IMS Technology Services, Inc. ("IMS"). *See* ECF 1 ("Compl."). Defendant IMS filed a Motion to Dismiss Plaintiff's Complaint on May 28, 2024, arguing that Plaintiff failed to allege a cognizable claim against IMS in his April 29, 2024 Complaint because there is no independent cause of action for respondeat superior in Pennsylvania. *See* ECF 11-1. Indeed, Plaintiff did not name IMS in any of the specific Counts of his Complaint other than Count VIII (alleging "respondeat superior" liability). *See* ECF 1.

1

Plaintiff then filed an Amended Complaint on or about June 8, 2024, in which Plaintiff added Defendant IMS to Counts I-V of his original Complaint[1] (along with what is now Count VI of his Amended Complaint alleging "Tortious Interference with Actual or Prospective Contractual Relations"), with the following summary allegation at the end of each such count:

> To the extent Mr. Leonard is determined to be liable to the Plaintiff under this count, IMS is vicariously liable to the Plaintiff to the same extent as is Mr. Leonard because IMS was, at all relevant times here, Mr. Leonard's employer and because the Plaintiff's claim here arose while Mr. Leonard was acting within the scope of his employment.

*See generally* ECF 12 ("Am. Compl").

Plaintiff's Amended Complaint nevertheless fails to plead facts sufficient to establish vicarious liability or, more specifically, the requisite knowledge on the part of IMS, carry his burden with respect to his claims of defamation *per se*, defamation, defamation by implication, false light, commercial disparagement and tortious interference. For these reasons, which are set forth in more detail below, Plaintiff's Amended Complaint should be dismissed in its entirety as to IMS with prejudice.

I.  **PLAINTIFF'S ALLEGATIONS**

Plaintiff generally alleges that Defendant Christopher Leonard, former Director of Audio for Defendant IMS, made comments during an industry trade event to employees of Rational Acoustics, LLC that suggested that Plaintiff had sexually exploited young adult women who are trying to enter the audio industry. Am. Compl. ¶ 17. Plaintiff further alleged that Defendant Leonard characterized Plaintiff's behavior as his version of "pay to play," stating: "if you have a sexual relationship with me, you'll benefit from my influence in the industry; if you don't, I'll use

---

[1] Complainant withdrew Count VI of his original Complaint ("Tortious Interference with Performance of Contracts"), along with Count VIII alleging Respondeat Superior against IMS.

my influence against you." *Id.* According to Plaintiff, he had been working as an independent contractor for Rational Acoustics since approximately 2019, Am. Compl. ¶ 11, but that as a result of Leonard's comments, Rational Acoustics severed its relationship with Plaintiff (although Plaintiff claims that Rational Acoustics has yet to formally notify Plaintiff that it terminated its agreement with him). Am. Compl. ¶¶ 11, 24-25.

Plaintiff also alleges that Defendant Leonard did not offer any substantiation or evidence for his comments, but that the comments nevertheless became widely disseminated very quickly through the audio community. Am. Compl. ¶ 18. According to Plaintiff, the damage to his reputation happened just as fast and was equally devastating. *Id.* Subsequent to the industry trade event noted above, Plaintiff alleges that Leonard also repeated the comments to the editor in chief of an audio engineering website (ProSound Web) for whom Plaintiff also works as a Technical Editor. Am. Compl. ¶ 19.

In the end, Plaintiff claims that Defendant Leonard said what he said about Plaintiff for only one reason: to destroy Plaintiff's professional reputation. Am. Compl. ¶ 23. Plaintiff maintains that he lost no less than three opportunities as a result of the alleged comments. Am. Compl. ¶ 29.

As it relates to IMS, Plaintiff summarily alleged that Defendant Leonard's attendance at the industry trade event during which the alleged defamatory comments were made was a function of Leonard's professional role as Director of Audio for IMS, whom Plaintiff alleges paid for Leonard's trade show badge admission, transportation, and lodging. Am. Compl. ¶ 16. Plaintiff also alleged that Leonard was "on the clock" for IMS and the statements he made to employees of Rational Acoustics were done so "in connection with his work duties." Am. Compl. ¶ 17. Plaintiff generally noted that IMS and Rational Acoustics "do business with each other." Am. Compl. ¶

3

15. As noted above, Counts I-VI of Plaintiff's Amended Complaint each end with the summary allegation that "[i]n the event that Mr. Leonard is determined to be liable to the Plaintiff . . . IMS is vicariously liable to the Plaintiff to the same extent as is Mr. Leonard because IMS was, at all relevant times here, Mr. Leonard's employer and because the Plaintiff's claim here arose while Leonard was acting within the scope of his employment." *See generally* Am. Compl.

## II.   ARGUMENT

### A.   Standard of Review

A complaint must be dismissed pursuant to Rule 12(b)(6) if it lacks sufficient factual matter—accepted as true and construed in a light most favorable to the plaintiff—to show that the claim is facially plausible. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (applying *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

To make this plausibility determination, the Court must engage in a two-part analysis: first, the Court must separate the factual and legal elements of a claim. *Id.* (applying *Iqbal,* 556 U.S. at 678). While accepting all of the complaint's well-pleaded facts as true, the Court is free to disregard any legal conclusions. *Id.* Second, the Court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *Id.* at 211. To make a plausible claim, in turn, it is not enough to merely allege the plaintiff's entitlement to relief: the plaintiff must *show* such entitlement with its facts. *Id.* Indeed, as the United States Supreme Court has established, "[t]hreadbare recitals of the elements of cause of action, supported by mere conclusory statements, do not suffice." *See, e.g., Hundley v. Wawa, Inc.,* No. CV 21-0627, 2021 WL 2555440, at *5 (E.D. Pa. June 22, 2021) (Baylson, J.) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

4

B.   **Vicarious Liability**

    1.   **Plaintiff's claims against IMS under a theory of vicarious liability must be dismissed as there is no underlying tort**

As noted earlier herein, Plaintiff's claims against IMS are rooted solely and exclusively in a theory of vicarious liability. The doctrine of vicarious liability generally holds a principal liable "for the frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances and misfeasances of his agent committed within the scope of his employment . . . ." *Bracke v. SiteOne Landscape Supply, LLC*, No. 21-5244, 2022 WL 1128951 at *6 (E.D. Pa. April 15, 2022) (quoting *Aiello v. Ed Saxe Real Estate, Inc.*, 499 A.2d 282, 285 (Pa. 1985)). Of course, a principal cannot be held vicariously liable where a plaintiff has failed to establish any initial wrongdoing on the part of an employee. *Bracke*, 2022 WL 1128951 at *6 (citing *Mamalis v. Atlas Van Lines, Inc.*, 528 A.2d 198, 200 (Pa. Super. 1987) ("A claim of vicarious liability depends on the life of the claim from which it derives."); see also *Dempsey v. Bucknell Univ.*, 76 F. Supp.3d 565, 585 (M.D. Pa. 2015) ("Because there is no underlying liability on the part of [the employee], there can be no vicarious liability on the part of Bucknell.").

Here, Plaintiff has not sufficiently plead an underlying tort for any of the Counts under which he asserts vicarious liability against IMS.

    a.   **The Amended Complaint fails to articulate a defamation claim**

Under Pennsylvania law, a plaintiff in a defamation action has the burden of proving the following: (1) the communication was defamatory; (2) publication by the defendant; (3) the communication applies to plaintiff; (4) the recipient of the communication understands the communication's defamatory meaning; (5) the recipient understands the communication to be intended to apply to plaintiff; (6) special harm resulting to the plaintiff from its publication; and

5

(7) abuse of a conditionally privileged occasion. *See* 42 Pa.C.S.A. § 8343; see also *Fanelle v. LoJack Corp.*, 79 F.Supp.2d 558, 561–562 (E.D.Pa.2000).

The first question in an action for defamation is always whether the statements themselves are capable of defamatory meaning. *Marcone v. Penthouse International Magazine for Men*, 754 F.2d 1072, 1078 (3rd Cir.1985), *cert. denied*, 474 U.S. 864, (1985). A statement is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Cosgrove Studio and Camera Shop, Inc. v. Pane*, 408 Pa. 314, 182 A.2d 751, 753 (Pa. 1962). In reaching such a determination, a court must consider not only the language of the statements but also the context in which they were published. *Pierce v. Capital Cities Communications, Inc.*, 576 F.2d 495, 502 (3d Cir. 1978), *cert. denied*, 439 U.S. 861 (1978). "[W]hether a communication is capable of defamatory meaning depends upon what a recipient 'correctly, or mistakenly but reasonably, understands' that the statement was intended to express." *Id*., quoting Restatement (Second) of Torts § 563 (1977)).

Notably, cases in which challenged statements feature equivocal or cautionary language are routinely dismissed because the statements are non-actionable opinion. *See, e.g.*, *Purcell v. Ewing*, 560 F. Supp.2d 337, 340 (M.D. Pa. 2008) (finding statements that alumnus looked like "someone accused of child molestation" was non-actionable opinion); *In re Maze*, 1999 WL 554600, at *2 (E.D. Pa. July 16, 1999) (finding statement in letter that plaintiff failed to pay taxes, "which money he seemingly misappropriated from his employees[,]" was non-actionable opinion); *see also Reardon v. Allegheny College*, 926 A.2d 477, 484 (Pa. Super. 2007) (finding use of the phrase "might have" rendered statement non-actionable because it was "a strong indication that this statement [was] merely one outlining possibilities").

Here, the statements cited by Plaintiff as the basis for his defamation claims related to Defendant Leonard's *beliefs* that Plaintiff had engaged in inappropriate conduct towards young adult women in the industry and his *belief* there was no place for such behavior in the same—in other words, a "cautionary" warning to others in the industry. Plaintiff's Amended Complaint makes it abundantly clear that Leonard is indeed familiar with Plaintiff, especially given Plaintiff's standing as a public figure in the audio/radio industry. Moreover, Leonard's statements appear on their face to be a matter of public concern. See *Amor v. Conover*, 635 F. Supp. 3d 363, 368–70 (E.D. Pa. 2022) (noting "[c]ourts in our circuit have applied this standard to hold allegations of sexual misconduct constitute a public controversy even when the controversy is relevant to only residents of the local community," and that "the issue of sexual misconduct in the workplace . . . surely falls within the ambit of public controversy.").

In that context, it is incumbent upon Plaintiff to demonstrate that the comments made by Leonard are provably false in order to draw scrutiny under the First Amendment. *See Smith v. Main Line Animal Rescue, Inc.*, No. 1132 MDA 2018, 2019 WL 4464814, at *5 (Pa. Super. Ct. Sept. 18, 2019) (holding that when raised by a public figure concerning statements bearing on a matter of public concern, claims for defamation are subject to an onerous standard of proof, owing to considerations of free speech that inhere to any claim that implicates the First Amendment. Consequently, our Courts' First Amendment jurisprudence makes clear that statements on matters of public concern must be provable as false before there can be liability under state defamation law . . . . Moreover, a statement of opinion relating to matters of public concern that does not contain a provably false connotation will receive full constitutional protection).

One is left to wonder how Plaintiff can sufficiently demonstrate that Leonard's subjective *opinion* that "he *felt* that young adult women in the industry couldn't make their own dating

7

decisions and that women found Plaintiff so 'mesmerizing' that they 'couldn't help themselves,'" is a provably false statement as opposed to a cautionary opinion. *See Mallory v. S & S Publishers*, 260 F. Supp. 3d 453, 461 (E.D. Pa. 2017), *aff'd sub nom. Mallory v. Simon & Schuster, Inc.*, 728 F. App'x 132 (3d Cir. 2018) (holding the biography's reference to the plaintiff as a "star seducer," is a "non-actionable opinion").

Leonard's comment that he believed Lombardo should be "removed from the industry" based on what he surmised was a pattern of inappropriate behavior is likewise subjective in nature. Leonard clearly does not possess the power to actually ban Plaintiff from the industry; rather, he was merely expressing his concern based on information that he had gathered in his years in the business and the individuals with whom both he and Lombardo engaged.  Leonard's stated belief that Lombardo "used his status" in the community and "prominence in the audio industry" to cause women to engage in sexual relationships with him is also nothing more than Leonard's subjective belief and is once again not a provably false statement. *See Monge v. Univ. of Pennsylvania,* No. CV 22-2942, 2023 WL 2391004, at *5 (E.D. Pa. Mar. 7, 2023) (holding statements that the plaintiff showed "unfathomable heartlessness and disrespect" and "ethical indifference" related to her treatment of deceased individuals' remains, were "non-actionable pure opinions because they express . . . subjective belief").

Even more damning to Plaintiff's claims is the fact that he never actually identified to whom the statements were made or, more importantly, whether the so-called recipients of the communication even understood the statements' defamatory meaning or used them against Plaintiff in any way.  After all, a plaintiff must be able to draw a causal connection between the alleged statement and any resulting damage that stemmed from the same. *See Turk v. Salisbury Behav. Health, Inc.*, No. 09-CV- 6181, 2010 WL 1718268, at *4 (E.D. Pa. Apr. 27, 2010).

Curiously, Plaintiff also acknowledged in his Amended Complaint—whether he intended to do so or not—that the alleged statement made by Leonard to ProSound Web editor-in-chief Keith Clark occurred weeks after attended the InfoComm industry event at a time when a handful of his former and prospective employers had already cut ties with Plaintiff. *See* Am. Compl. ¶ 19. One wonders how Plaintiff could possibly satisfy his burden of proving a direct correlation between the alleged comments and his supposed damages as a result of the same.

For these reasons, Plaintiff's defamation claim against IMS must be dismissed.

### b. Plaintiff fails to state a cause of action of Defamation *Per Se*

Pennsylvania courts generally separate claims of defamation per se into four separate categories: (1) a criminal offense; (2) a loathsome disease; (3) business misconduct; or (4) serious sexual misconduct." *Jungclaus v. Waverly Heights, Ltd.*, No. CV 17-4462, 2018 WL 1705961, at *3 (E.D. Pa. April 9. 2018). Leonard's comments clearly do not fall into the first three categories, and so Plaintiff would have to sufficiently allege that the comments touched on serious sexual misconduct. This Court previously cited the Restatement (Second) of Torts for guidance on defamation *per se* claims, which interprets the meaning of "serious sexual misconduct" as follows:

> The rule stated in this Section has been generally applied to any statement that imputes any form of unchastity to a woman, married or single, irrespective of whether the conduct charged constitutes a criminal offense. The rule applies to a statement charging a woman with specific acts of adultery, fornication or any other form of sexual intercourse with a man other than her husband, as well as to general charges of unchaste conduct. It does not apply to mere imputations of immodesty that do not imply unchaste conduct.

*See Goldfarb v. Kalodimos*, 539 F. Supp. 3d 435, 462, n.12 (E.D. Pa. 2021) (quoting Restatement (Second) of Torts § 574 (1977)).

To be clear, Plaintiff has not alleged that Leonard accused him of forcing himself upon anyone or that Plaintiff was engaging in sexual conduct with females in the industry who were not

9

of the legal age of consent. Leonard merely alleged that Plaintiff used his status to exploit women trying to move forward in the industry—and young *adult* women at that. *Cf., Rose v. Dowd,* 265 F.Supp.3d 525, 533 (E.D. Pa. 2017) (holding statement that the plaintiff "ran young girls for him down at spring training, ages 12 to 14 . . . so that's statutory rape every time you do that" was capable of a defamatory meaning); *Wagner v. Tuscarora School Dist.*, 2005 WL 2319141, *5-6 (M.D. Pa. Sept. 21, 2005) (holding a statement that a high school band director sexually harassed *students* stated a claim for defamation *per se*).

For these reasons, Plaintiff's claim of defamation per se against IMS must be dismissed.

### c.   Leonard's statements do not constitute Defamation by Implication

Leonard's *opinions* about what IMS has already demonstrated were matters of public concern also negate any claim of defamation by implication. This Court has held that "a claim for defamation may exist where the words utilized themselves are not defamatory in nature, however, the context in which these statements are issued creates a defamatory implication, i.e., defamation by innuendo." *Monge*, 674 F. Supp. at 208 (citing *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010)). As this Court noted, to "establish defamation by innuendo, the innuendo must be warranted, justified and supported by the publication." *Id.* (citing *Livingston v. Murray*, 417 Pa. Super. 202, 612 A.2d 443, 449 (Pa. Super. Ct. 1992) (internal quotation marks omitted). In other words, the Court must determine whether the language used "could fairly and reasonably be construed to have the meaning imputed in the innuendo." *Sarkees v. Warner-West Corp.*, 349 Pa. 365, 37 A.2d 544, 546 (1994). "When the implication alleged by the plaintiff is not reasonably susceptible of a defamatory meaning, the plaintiff has failed to state a claim." *Pace*, 432 F. Supp. 3d at 510 (internal quotation marks omitted).

This is generally the case when the allegedly defamatory implications are—as here—merely a matter of pure opinion.

For these reasons, Plaintiff's defamation by implication claim against IMS must be dismissed.

### d. Because the alleged comments were a matter of public concern, Plaintiff's false light claim must fail

Generally speaking, "Pennsylvania courts apply the same analysis to both defamation and false light." *Hill v. Cosby*, 665 F. App'x 169, 177 (3d Cir. 2016) (citations omitted); see also *Fraternal Order of Police Phila. Lodge No. 5 v. The Crucifucks*, 1996 WL 426709, at *4 (E.D. Pa. July 29, 1996). Notwithstanding the foregoing, this Court has held that a claim of false light arises where private facts that could otherwise be highly offensive are made public even though they do not touch upon matters of public concern. *Schatzberg v. State Farm Mut. Auto. Ins. Co.*, 877 F. Supp. 2d 232, 245 (E.D. Pa. 2012). In order to satisfy the "publicity" element of a false light claim, a Plaintiff must demonstrate that private facts were made public by way of a communication to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. *Vogel v. W.T. Grant Co.*, 458 Pa. 124, 327 A.2d 133, 137 (1974) ('The disclosure . . . must be a public disclosure, and not a private one; there must be, in other words, publicity. It is an invasion of his rights to publish in a newspaper that the plaintiff did not pay his debts, or to post a notice to that effect in a window on the public street, or to cry it aloud in the highway, but not to communicate the fact to the plaintiff's employer, or to any other individual, or even to a small group . . . .') (quoting W. Prosser, Handbook of the Law of Torts §117 at 810–12 (4th ed.1971)). *Id.* at 245.

Here, Plaintiff has not alleged that Leonard broadcast his comments to anyone other than a small group of Rational Acoustic employees at the trade show—who Plaintiff failed to identify

11

with any specificity, no less—and to ProSource Web's editor-in-chief, Keith Clark.[2]  This is hardly the type of "publicity" contemplated by Pennsylvania courts when weighing a claim for false light. Moreover, even had Leonard "publicized" the comments to a much large group or in a more formal medium (i.e., a media publication, a live radio broadcast, etc.), the comments once again touched upon a matter of public concern.

For these reasons, Plaintiff's claim of false light against IMS must be dismissed.

> e. **Leonard's claims had nothing to do with goods or services provided by Plaintiff or his business, rendering his claim for commercial disparagement moot**

This Court has long recognized that a commercial disparagement action is meant to compensate a vendor for pecuniary loss suffered because statements attacking *the quality of its goods* have reduced their marketability.  *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 924 (3d Cir. 1990).  Indeed, the Third Circuit has consistently distinguished between defamation and commercial disparagement claims, noting that "[a]n action for commercial disparagement is meant to compensate a vendor for pecuniary loss suffered because statements attacking ***the quality of his goods have reduced their marketability***, while defamation is meant protect an entity's interest in character and reputation." *Id.* (emphasis added); *see also The Knit With v. Knitting Fever, Inc.*, No. CIV.A. 08-4221, 2010 WL 3792200, at *7 (E.D. Pa. Sept. 28, 2010) (emphasis added) (claim for defamation lies where the defamatory statement imputes to the corporation fraud, deceit, dishonesty, or reprehensible conduct, while a claim for commercial disparagement lies where the publication on its face is directed against the goods or products of a corporate vendor and pecuniary loss results from the same). To establish a pecuniary loss, a

---

[2] Plaintiff did note that he believes the comments made Clark were made in the presence of one other individual.

Plaintiff must allege either "a general diminution in sales or specific lost sales." *Synygy, Inc. v. ZS Assocs., Inc.*, 110 F. Supp. 3d 602, 619 (E.D. Pa. 2015). Against that backdrop, Plaintiff would have to demonstrate that Leonard's comments were directed specifically at his business, which he simply has not—and cannot—allege. *See Synygy, Inc.,* 110 F. Supp. 3d at 618 (holding that "[b]ecause the tort of disparagement protects against pecuniary loss, the elements of the cause of action are much more stringent than those for defamation . . . General loss of reputation or character is insufficient for recovery.").

In addition, Plaintiff would have to demonstrate that Leonard knew that the statements he allegedly made were false or acted in reckless disregard to their truth. *Watson v. Abington Twp.*, No. CIV.A. 01-5501, 2002 WL 32351171, at *8 (E.D. Pa. Aug. 15, 2002). Plaintiff's "reputation," which is what he alleged that Leonard spoke out on, is not one in the same with his "business." *See The Knit With,* 2010 WL 3792200, at *7; *U.S. Healthcare, Inc.*, 898 F.2d at 924 (highlighting the difference between a pure defamation claim and a claim for commercial disparagement).

For these reasons, Plaintiff's claim of commercial disparagement against IMS must be dismissed.

> **f.    Plaintiff has not alleged the requisite knowledge to establish a Tortious Interference with Actual or Prospective Contractual Relations claim**

To survive a motion to dismiss a tortious interference claim, a plaintiff must allege a "'reasonable probability' that a contract would have arisen absent the defendant's interference." *Sandoz Inc. v. Lannett Co.*, 544 F. Supp. 3d 505, 511-512 (E.D. Pa. 2021) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471–72 (Pa. 1979)). This Court recognized that to do so, a plaintiff must put forth "something more than a mere hope" of a future contractual relationship. *Khawaja v. Bay Mgm't Group, LLC*, No. 22-182, 2022 WL 1308508, *3 (E.D. Pa.

May 2, 2022) (citing *Sandoz*, 544 F. Supp. 3d at 511-512) (internal citations omitted). Indeed, a plaintiff must also "base [his] claim . . . on something other than an existing or current relationship." *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 213 (3d Cir. 2009) (citing *Phillips v. Selig*, 959 A.2d 420, 429 (Pa. Super. Ct. 2008)).

Equally of note, "[f]or a defendant to have specific intent to harm a contractual relationship, it must first have knowledge of that contractual relationship. Actual knowledge of the contract with which a defendant supposedly interfered is a prerequisite to making out a claim for tortious interference." *Acclaim Sys., Inc. v. Infosys, Ltd.*, 679 F. App'x 207, 211 (3d Cir. 2017). "Moreover, that knowledge must be specific to the particular contractual right upon which the defendant infringes . . . . General knowledge of a business relationship is not sufficient; the defendant must have specific knowledge of the contract right upon which his actions infringe." *Id.* (emphasis added) (quoting *Gianacopoulos v. MOS Design, Inc.*, No. CIV.A. 3:05–2417, 2008 WL 1774094, at *6 (M.D. Pa. Apr. 16, 2008)).

Here, Plaintiff fails to allege that Leonard had knowledge of his alleged existing contracts with Rational Acoustics, RSE, or Meyer Sound, or an alleged prospective contract with Meyer Sound. Plaintiff instead summarily states that Leonard "knows people who work for Rational Acoustics, and meeting up with friends and acquaintances and generally networking is one of the reasons why people go to tradeshows." Am. Compl. ¶ 17. There is no direct tie alleged by Plaintiff between Leonard's statements at the industry trade show and Rational Acoustics decision to move on from Plaintiff—especially given the fact that Plaintiff failed to identify with whom at Rational Acoustics Leonard allegedly spoke.

Similarly, Plaintiff merely speculated as to the cause for RSE ending its relationship with Plaintiff, stating "Plaintiff *believes* that [it] was directly attributable to Mr. Leonard's campaign to

discredit [him.]" Am. Compl. ¶ 27.  In fact, Plaintiff all but admitted that he never uncovered the reason that RSE replaced him on an upcoming audio tour.[3]  As for Meyer Sound, Plaintiff hardly plead a guaranteed relationship going forward, noting that he initially entered into a contract with Meyer Sound "for [a] single engagement."  Am. Compl. ¶ 28.  Plaintiff's claim that Meyer Sound expressed to him that it wanted him to provide further services for future engagements is hardly indicative of a specific contract with which Leonard's comments interfered.

Of course, if Leonard was unaware of Lombardo's alleged contractual relations—or, for that matter, the contracts themselves were only speculative at best—then Leonard could not have acted with the requisite intent to interfere with the same.  *See PeriRx, Inc. v. Regents of Univ. of California,* No. 2:20-CV-02212-JDW, 2020 WL 12833950, at *8 (E.D. Pa. Dec. 3, 2020), *aff'd sub nom.,* 2023 WL 1267173 (3d Cir. Jan. 31, 2023) (holding "PeriRx has failed to state a claim for intentional or negligent interference with a prospective economic advantage against these two defendants because it has not alleged that either defendant knew about PeriRx's negotiations with Hoffman LaRoche and made the alleged misrepresentation to disrupt or halt those negotiations").

In the end, Plaintiff's self-serving allegation that "Leonard said what he said about the Plaintiff at InfoComm and to ProSoundWeb for only one reason: to destroy the Plaintiff's professional reputation" Am. Compl. ¶ 23) highlights the fact that Plaintiff is trying to disguise his defamation claims as something they are not—namely, a tortious interference claim (which this Court has long cautioned against). The fact remains that Plaintiff not only failed to plead that Leonard made the alleged statements with the specific intent of interfering with his contractual

---

[3] In Plaintiff's Complaint he stated that RSE ignored his requests to be paid for the work he had allegedly already performed to get ready for the tour, which could have been for a variety of reasons unrelated to Leonard's comments, which Plaintiff never alleged were made directly to any employees of RSE.

15

relations, but that he also failed to demonstrate that these so-called contractual relations were anything more than speculative at best.

For these reasons, Plaintiff's tortious interference claim against IMS must be dismissed.

### 2. Defendant Leonard's statements were not made in the furtherance of IMS's business.

Even it were determined that Plaintiff sufficiently articulated a claim for one or more of the foregoing torts, he is nevertheless unable to establish that IMS was vicariously liable for any or all of them because they were not made during the course of Leonard's employment nor were they made in furtherance of IMS's business. The Supreme Court has expressly held that an employer is vicariously liable for intentional torts, including defamation, committed by its employees provided it occurs within the scope of their employment. *Printing Mart–Morristown v. Sharp Elecs. Corp.,* 116 N.J. 739, 563 A.2d 31, 47–48 (1989); see also *Belt v. GEO Group, Inc.*, 2007 WL 1030530, at *6 (E.D.Pa. Apr.4, 2007) ("[A]n employer is held vicariously liable for the negligent acts of his employee which cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment.") (internal citations omitted).

An employee's conduct is considered "within the scope of employment" only if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer. *Id.*, citing Restatement (Second) of Agency, § 228. This Court has previously recognized that "[i]f the facts fail to support a reasonable inference that the employee was acting in furtherance of his employer's business, the servant's conduct falls outside the scope of his employment as a matter of law." *Shaup v. Jack D's, Inc.*, No. 03-cv-5570, 2004

WL 1837030, at *2 (E.D. Pa. Aug. 17, 2004).  In *Shaup*, the Plaintiff alleged that her employer was vicariously liable for inappropriate comments and conduct on the part of the owner of the company, which she claims amounted among other things to intentional infliction of emotional distress.  The defendants moved to dismiss the vicarious liability claim, and this Court ultimately agreed.  The Court noted that, much like here, the plaintiff's complaint "ma[de] no allegations that the lewd comments and unwelcome sexual advances were in any way in furtherance of the employer's business" and that "[t]he harassment that is the basis of the IIED claim was motivated for reasons personal to the plaintiff."  *Shaup*, 2004 WL 1837030 at *2.

Defendant IMS neither condoned nor directed Leonard to speak out in the way that he did; Leonard was instead sharing his opinion on what he believed was a matter of public concern in the industry that involved a public figure.  His comments were not made during a sanctioned portion of the trade show itself; rather, as Plaintiff noted in his Amended Complaint, they were made while "meeting up with friends and acquaintances," which is "one of the reasons why people go to trade shows."  Am. Compl. ¶ 17.  The mere fact that IMS may have paid for Leonard's badge, transportation, and lodging or that he was "on the clock" (Am. Compl. ¶¶ 16-17) does not in and of itself lend credence to Plaintiff's claim that Leonard was therefore acting in the scope of his employment and in furtherance of a specific IMS objective.[4]

For these reasons, Plaintiff's vicarious liability claims against IMS must be dismissed.

---

[4] Plaintiff has altogether failed to allege how IMS did benefit—or would benefit—from Leonard's so-called "offensive campaign" against him.

### III. CONCLUSION

For the reasons set forth above, Defendant IMS Technology Services, Inc. respectfully requests that this Honorable Court dismiss Plaintiff's Amended Complaint as to IMS with prejudice.

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

/s/ Alexander Nemiroff
Alexander Nemiroff (PA ID #92250)
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA 19103
(267) 602-2040 (phone)
(215) 253-5017 (fax)
anemiroff@grsm.com
*Attorneys for Defendant*
*IMS Technology Services, Inc.*

Dated: June 24, 2024