IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL LAWRENCE LOMBARDO, | : | CIVIL ACTION |
| Plaintiff, | : | No. 2:24-cv-01711-KBH |
| v. | : | |
| CHRISTOPHER BRYAN LEONARD and IMS TECHNOLOGY SERVICES, INC., | : | |
| Defendants. | : | |

**DEFENDANT CHRISTOPHER BRYAN LEONARD'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**I.    INTRODUCTION**

Lombardo's Opposition ("Opposition") in response to Leonard's Motion to Dismiss fails to address the deficiencies of the Amended Complaint. Instead, Lombardo seeks this Court's leniency from the pleading requirements due to his status as a *pro se* plaintiff. However, regardless of whether Lombardo is *pro se*, the arguments he asserts in his Opposition reinforce that his claims are both factually and legally deficient; and therefore, any further amendments to the Complaint would be futile.

Lombardo claims he has sustained significant economic damages from alleged defamatory statements Leonard made to unidentified Rational Acoustics employees, without pleading any causation between the statements and damages. Lombardo further asserts, as the basis for his commercial disparagement claim, that the alleged statements regarding his sexual relationships with young adult women in the audio community were an attack on his audio engineering services, merely reiterating his defamation claim. He also seeks to hold Leonard liable for tortiously interfering in his contractual and prospective contractual relations, based on a presumption that Leonard knew of his specific contractual relations solely based on their relationship as co-hosts of

a podcast. In light of the foregoing, and the reasons stated in more detail herein and in the original Motion, Lombardo's Amended Complaint should be dismissed.

## II. ARGUMENT

### A. Defamation Claims

#### 1. Lombardo's Opposition Confirms Leonard's Alleged Statements are Incapable of Defamatory Meaning

Lombardo asserts in his Opposition that the individuals to whom Leonard made the alleged defamatory statements would have surmised that Leonard had personal knowledge of undisclosed supporting facts. (ECF Doc. No. 20 p. 9.) Lombardo states only that Leonard made the alleged statements to "management-level employees of both Rational Acoustics and ProSoundWeb, and those employees presumably knew, as [he] alleged in the Amended Complaint, that Mr. Leonard and [Lombardo] worked closely together." (*Id.*). As an initial matter, Lombardo did not, in fact, allege the latter allegations in the Amended Complaint. Rather, he alleges for the first time in his Opposition that Leonard made the alleged statements to "management-level employees" of Rational Acoustics, and that the recipients of the statements at Rational Acoustics knew that Lombardo and Leonard worked closely together. The Court should disregard these new allegations asserted for the first time in Lombardo's Opposition. *See Cherry v. City of Philadelphia*, No. CIV.A. 04-1393, 2004 WL 2600684, at *3 (E.D. Pa. Nov. 15, 2004).

Furthermore, the cases Lombardo cites are distinguishable from the instant case. *Roffman v. Trump* and *Ramsey v. AT&T Corp.* both support the proposition that "there can be little doubt that a person who hears someone *criticizing another's job performance* would presume that the person doling out the disparaging comments possessed knowledge of some facts on which to base the criticism." *Roffman v. Trump*, 754 F. Supp. 411, 419 (E.D. Pa. 1990) (emphasis added); *Ramsey v. AT&T Corp.*, No. CIV. A. 97-CV-1301, 1997 WL 560183, at *6 (E.D. Pa. Aug. 27, 1997). Here,

2

Leonard's alleged statements did not concern Lombardo's job performance. Just because Leonard happened to co-host a podcast with Lombardo does not mean he would have knowledge of undisclosed facts to support the alleged statements.

### 2. Lombardo's Own Allegations Support His Status as a Public Figure and that the Alleged Statements Address Matters of Public Concern

Lombardo denies he is a public figure, yet his own allegations in the Amended Complaint, which he reiterates in his Opposition, support his status as a public figure:

> The Plaintiff has published over 50 technical articles, a full-length book, and co-authored a number of peer-reviewed papers on sound system design and related topics. The Plaintiff has presented his work for many professional industry bodies and events, including the National Association of Music Merchants, the Audio Engineering Society, the Event Safety Summit and the National Hearing Conservation Association Conference.

(ECF Doc. No. 12 ¶ 6) (ECF Doc. No. 20 p. 2.)

> In October 2018, the Plaintiff created an audio engineering podcast called Signal to Noise, published via the ProSoundWeb platform. Within five years, the Signal to Noise podcast had grown to over 20,000 downloads per month and over half a million lifetime downloads, and had active Facebook page and Discord communities with thousands of members.

(ECF Doc. No. 12 ¶ 8) (ECF Doc. No. 20 p. 2.) *See Amor v. Conover*, 635 F. Supp. 3d 363, 370 (E.D. Pa. 2022) (noting Plaintiff "by his own admission, 'has a high profile on numerous Internet sites'…. and attract[s] significant attention on social media"); *see also Amor v. Conover*, No. 5:21-CV-05574-JMG, 2023 WL 5339618, at *6 (E.D. Pa. Aug. 18, 2023) (citing *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 171 (2d Cir. 2000) (holding the plaintiff who was a radio commentator, was a public figure).

Furthermore, by Lombardo's own admission in his Opposition, Leonard's alleged statements addressed matters of public concern: "Because of the conduct that the #MeToo

3

movement brought into daylight, the entire entertainment industry – including the audio engineering industry – is keenly sensitive to issues involving the sexual harassment and sexual abuse of women in the workplace." (ECF Doc. No. 20 p. 14.)

### 3. Lombardo Misconstrues the Law Regarding Pleading Requirements for Defamation Claims

Lombardo asserts that his failure to identify the "Rational Acoustics employees" to whom Leonard made the alleged statements is immaterial, because the Federal Rules of Civil Procedure do not require the heightened specificity for defamation claims required under Pennsylvania law. (*Id.* at 11-12.) However, Lombardo misconstrues the law and Leonard's argument. Lombardo alleges that Leonard made the statements to the unidentified Rational Acoustics employees at InfoComm 2023, *before* making additional statements to Keith Clark of ProSoundWeb. (*See* ECF Doc. No. 12 ¶¶ 16 – 19.)  Lombardo further alleges as follows, regarding Leonard's statements to the unidentified Rational Acoustics employees:

> these false statements regarding the Plaintiff became widely disseminated very quickly, raging through the very tight-knit audio community. The damage to the Plaintiff's reputation happened just as fast and was equally devastating. The detail below as to the booked and prospective gigs that the Plaintiff lost in the weeks after InfoComm ended leaves no doubt as to wide-spread damage that Mr. Leonard wrought. . . .
>
> InfoComm 2023 ended on June 16, 2023. On June 23, 2023, the Plaintiff received an email from an audio engineer based in Germany stating that Rational Acoustics had informed a gathering of audio instructors that the Plaintiff would no longer be working with Rational Acoustics. . . .

(*Id.* at ¶¶ 18, 23.)

The more relaxed pleading standard for defamation claims under the federal rules does not excuse Lombardo's failure to identify the Rational Acoustics employees to whom Lombardo made the alleged statements at InfoComm 2023. Rather, his failure to identify the Rational Acoustics

employees signifies that he has failed to connect the alleged defamatory statements to the alleged harm he has sustained. In *Turk v. Salisbury Behav. Health, Inc.*, No. 09-CV-6181, 2010 WL 1718268 (E.D. Pa. Apr. 27, 2010), the court reasoned as follows, in granting the defendant's Motion to Dismiss:

> Regardless of which pleading standard applies, plaintiff's Amended Complaint fails to state a claim for defamation. The Amended Complaint does not identify the substance of the alleged defamatory statements, or state the circumstances under which they were allegedly made. . . . **Furthermore, plaintiff has not identified any specific recipient of the alleged communications, and thus has failed to connect the defamatory statements to his failure to obtain a job, harm to his reputation, or any other claimed injury.** As such, plaintiff has not sufficiently plead facts which satisfy the elements of defamation under Pennsylvania law.

*Id.* at *4 (emphasis added).

### 4. Lombardo's Opposition Fails to Refute that the Alleged Statements do Not Concern Serious Sexual Misconduct Giving Rise to a Defamation *Per Se* Claim

In claiming Leonard's alleged statements concern serious sexual misconduct for a defamation *per se* claim, Lombardo merely attacks Leonard's reliance on the Restatement (Second) of Torts. (ECF Doc. No. 20 p. 13.) Notwithstanding the fact that courts within this District follow Comment b of the Restatement (Second) of Torts § 574, regardless of whether it is "50-year-old commentary," Lombardo's Opposition omits any case law to support that Leonard's alleged statements *do* concern serious sexual misconduct. (*See id.* at 13.)

### B. Lombardo Still Fails to State a Commercial Disparagement Claim

Lombardo argues in support of his claim for commercial disparagement that the services he provides cannot be separated from him as the business owner; therefore, an attack on Lombardo is also an attack on the services he provides. (*Id.* at 14.) Lombardo wrongly relies on *Weiser Law Firm, P.C. v. Harlieb,* 2022 WL 970757 (E.D. Pa. Mar. 31, 2022), in support of his arguments.

(*Id.*). *Weiser Law Firm* is distinguishable from the instant case. In *Weiser Law Firm,* the defendant made statements "which could imply that [the attorney's] legal work is of shoddy quality and/or unethical," and "raised concerns over [the attorney's] billing practices," which could cause prospective clients to be "less likely to retain a lawyer known to inflate his bills." *Id.* at *17. Therefore, the *Weiser Law Firm* Court found that the alleged statements were "actionable for commercial disparagement," because they "arguably attack the quality of Plaintiffs' legal services." *Id.* Whereas, here, Leonard's alleged statements regarding his relationships with young adult women are wholly unrelated to the quality of Lombardo's audio engineering services.

      C.      **Lombardo Still Fails to State Tortious Interference Claims**

Lombardo argues that his status as a *pro se* Plaintiff should afford him leniency in his pleading requirements, and that the allegations he asserted in Paragraphs 13 and 17 of the Amended Complaint indicate that Leonard had knowledge of Lombardo's "professional relationships with Rational Acoustics, Inc. and with ProSoundWeb." (ECF Doc. No. 20 p. 15.) However, Lombardo does not in fact plead in Paragraphs 13 and 17 of the Amended Complaint that Leonard had knowledge of Lombardo's professional relationships with Rational Acoustics and ProSoundWeb:

> 13.  In May 2023, Rational Acoustics offered two professional audio training classes at its office in Woodstock, Connecticut, after which several Rational Acoustics staff members joined several of the participants enrolled at the class for a meal at a local restaurant called The Stomping Ground in Putnam, Connecticut. The Plaintiff was in the group, along with his then partner and now fiancé, who is also an experienced audio engineer.
>
> 17.  While at InfoComm, Mr. Leonard, while 'on the clock' for IMS and in connection with his work duties, went to the Rational Acoustics booth. That itself is not surprising: he knows people who work for Rational Acoustics, and meeting up with friends and acquaintances and generally networking is one of the reasons why people go to tradeshows. Mr. Leonard, however, used his time at the Rational Acoustics booth to do far more than catch up with people he knew and make new contacts. Rather – at a booth located in the

6

> middle of the trade show floor at the one of the audio industry's largest annual events – Mr. Leonard asserted to Rational Acoustics employees in words or substance that the Plaintiff had a pattern of using his status in the Signal to Noise community and his prominence in the audio industry generally to sexually exploit young adult women who are trying to enter the audio industry or advance in it. As Mr. Leonard told it, the Plaintiff offered these women his version of 'pay to play': if you have a sexual relationship with me, you'll benefit from my influence in the industry; if you don't, I'll use my influence against you.

(ECF Doc. No. 12.)

Notwithstanding, the law within this Circuit is clear that to sustain a tortious interference claim, "[g]eneral knowledge of a business relationship is not sufficient; the defendant must have specific knowledge of the contract right upon which his actions infringe." *Acclaim Sys., Inc. v. Infosys, Ltd.*, 679 F. App'x 207, 211 (3d Cir. 2017). By Lombardo's own admission, at best, Leonard merely had general knowledge of Lombardo's "professional relationships" with Rational Acoustics and ProSoundWeb, which is insufficient and fatal to sustaining a claim for tortious interference. (ECF Doc. No. 20 p. 15.)

### III.   CONCLUSION

For the foregoing reasons, and those previously set forth in the moving Motion, Defendant Leonard respectfully requests that this Honorable Court grant his Motion to Dismiss Plaintiff's Amended Complaint, and dismiss the Amended Complaint with Prejudice.

          **KAUFMAN DOLOWICH LLP**

          */s/ Gregory Hyman*
          Gregory S. Hyman, Esq.
          Jennifer L. Prior, Esq.
          1650 Market Street, Suite 4800
          Philadelphia, PA 19103
          T: (484) 841-7106
          ghyman@kaufmandolowich.com
          jprior@kaufmandolowich.com

Dated: July 26, 2024          *Counsel for Defendant Christopher Bryan Leonard*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL LAWRENCE LOMBARDO, | : CIVIL ACTION |
| Plaintiff, | : No. 2:24-cv-01711-KBH |
| v. | : |
| CHRISTOPHER BRYAN LEONARD and IMS TECHNOLOGY SERVICES, INC., | : |
| Defendants. | : |

## CERTIFICATE OF SERVICE

I, Gregory S. Hyman, Esq., hereby certify that on this 26th day of July 2024, I caused a true and correct copy of Defendant Christopher Bryan Leonard's Reply Brief in Support of His Motion to Dismiss Plaintiff's Amended Complaint, to be served on the below, via ECF:

Michael Lawrence Lombardo
45 Laurel Trail
Monroe, NY 10950
iamthemichaellawrence@gmail.com
*Pro se Plaintiff*

Alexander Nemiroff, Esq.
GORDON & REES, LLP
Three Logan Square
1717 Arch St.
Suite 610
Philadelphia, PA 19103
anemiroff@gordonrees.com
*Counsel for Defendant IMS Technology Services, Inc.*

**KAUFMAN DOLOWICH LLP**

*/s/ Gregory S. Hyman*
Gregory S. Hyman