IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL LAWRENCE LOMBARDO, | : | |
| | : | CIVIL No. 2:24-cv-01711-KBH |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Honorable Kelley Brisbon Hodge |
| CHRISTOPHER BRYAN LEONARD | : | |
| | : | |
| and | : | |
| | : | |
| IMS TECHNOLOGY SERVICES, INC., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT IMS TECHNOLOGY SERVICES, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**I.  PRELIMINARY STATEMENT**

Despite his efforts to bolster his claims in his Opposition, the fact remains that Plaintiff Michael Lawrence Lombardo ("Plaintiff") cannot overcome his burden of alleging more than just "[t]hreadbare recitals of the elements of cause of action, supported by mere conclusory statements" in his Complaint. *See, e.g., Hundley v. Wawa, Inc.,* No. CV 21-0627, 2021 WL 2555440, at *5 (E.D. Pa. June 22, 2021) (Baylson, J.) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Plaintiff's failure could not be clearer than with respect to his claim of vicarious liability against Defendant IMS, wherein Plaintiff has neglected to plead a single fact to suggest that Defendant Leonard's statements were made "in furtherance of IMS's business." Plaintiff's summary claim that Leonard's activity was "actuated, at least in part, by a purpose to serve [IMS]," Plaintiff's Opp. Br. at 17, without more, is exactly the type of perfunctory pleading that this Court has cautioned against.

1

Moreover, such failure cannot be excused merely because of the fact that Plaintiff is a *pro se* Plaintiff. In the end, *pro se* litigants must still allege "sufficient facts in their complaints to support a claim." *Vogt v. Wentzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (quoting *Maia v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)).[1]

Of course, to hold IMS vicariously liable for Leonard's alleged conduct in the first place, Plaintiff was required to sufficiently plead that Leonard committed the underlying torts set forth in his Amended Complaint. He has failed in this regard as well. Take, for example, Plaintiff's defamation claims, in which he fails to adequately identify to whom the alleged statements were made or, more importantly, whether the so-called recipients of the communication even understood the statements' defamatory meaning or used them against Plaintiff in any way. Plaintiff states in his Opposition that the statements, "when heard by the average listener, suggest the existence of some undisclosed defamatory facts." Plaintiff's Opp. Br. at p. 9. The problem is that "the average listener" is not the standard.

Plaintiff's commercial disparagement claim is likewise deficient because his "reputation" is not synonymous with his "business"—unlike the case upon which Plaintiff relies in his Opposition in which a named partner of a law firm successfully overcame a motion to dismiss a commercial disparagement claim because the law firm was literally "his" business (indeed, his name was on the door). Lastly, Plaintiff's tortious interference claim appears to be grounded solely in his hope that this Court will "infer" that he and Defendant Leonard "were close enough that

---

[1] It also appears that Plaintiff is receiving the assistance of an attorney in this matter. Some judges in this jurisdiction have required that "Pro se litigants who are not being formally being represented by lawyers, but have received substantive assistance . . . from an attorney for any material filed with the Court shall, in the filed material, identify the attorney, attorney's contribution to the filing, and the scope of the attorney's limited representation or other assistance." *Cianci v. Phoenixville Area School District*, 2022 WL 824026 at *10, n.6 (E.D. Pa. March 3, 2022) (Pratter, J.). This procedure would be appropriate in this matter.

[Plaintiff] disclosed intimate details of his personal life with [Leonard]" and that Leonard "knew about [his] actual and prospective business relationships." Plaintiff's Opp. Br. at p. 15. Even as a *pro se* Plaintiff, the mere fact that Plaintiff and Defendant Leonard worked together is not enough to make the leap that he is asking this Court to make.

For these reasons, as well as those set forth in Defendant IMS's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Amended Complaint (Doc. 17-1), Plaintiff's Amended Complaint as to IMS should be dismissed.

## II.   LEGAL ARGUMENT

### A.   Vicarious Liability

Plaintiff's Opposition curiously states that he has alleged "enough at this stage of the litigation 'to support a reasonable inference that [Leonard] was acting in furtherance of IMS's business." Plaintiff's Opp. Br. at p. 17 (citing *Shaup v. Jack D's, Inc.*, No. 03-cv-5570, 2004 WL 1837030, at *2 (E.D. Pa. Aug. 17, 2004)) (internal citations omitted). And yet when examining what exactly Plaintiff has alleged to support his vicarious liability claim, it is plainly obvious that Plaintiff has fallen woefully short with respect to his burden.

As a preliminary matter, Plaintiff's Opposition blatantly mischaracterizes his own Amended Complaint. Indeed, Plaintiff posits in his Opposition that "[he] allege[d] that Mr. Leonard justified his actions by telling at lease [sic] ProSoundWeb that he was *protecting the industry*—an industry that includes both IMS and its business partner Rational—from [Plaintiff]." Plaintiff's Opp. Br. at p. 18 (citing Plaintiff's Am. Compl., ¶22) (emphasis added). Paragraph 22 of Plaintiff's Amended Complaint, however, states nothing of the sort.[2] Even if Plaintiff were

---

[2] Paragraph 22 instead alleges that Leonard told ProSoundWeb's editor-in-chief, Keith Clark, that he felt that young adult women in the industry couldn't make their own dating decisions because

mistaken and meant to cite Paragraph 21, Paragraph 21 states in no uncertain terms that "Leonard claimed he was 'protecting *ProSoundWeb.*'" Plaintiff's Am. Compl., ¶21 (emphasis added). Clearly, Plaintiff never alleged that Leonard's stated purpose was to "protect the industry," much in the same way that Plaintiff never alleged that Leonard's purpose was to protect IMS.

Against that backdrop, Plaintiff then takes the extraordinary leap in his Opposition of arguing that because the "industry" includes both IMS and Rational Acoustics, "protecting IMS and Rational would *seem* to further IMS's business interests." Plaintiff's Opp. Br. at p. 18 (emphasis added). This is pure, unadulterated speculation. Plaintiff has not alleged a single fact that IMS benefitted in any way from Leonard's comments, let alone that it condoned or even encouraged Leonard to speak out in furtherance of its business. All Plaintiff has alleged with respect to IMS was that IMS paid for Leonard's trade show badge, his transportation, and his lodging. The fact that Leonard allegedly went and spoke with individuals at Rational Acoustics' booth—by Plaintiff's own admission—was not a function of him being "on the clock," but was instead not surprising given that "[Leonard] know people who work for Rational Acoustics, and meeting up with friends and acquaintances and generally networking is one of the reasons why people go to tradeshows." Plaintiff's Am. Compl., ¶17.[3] Likewise, the fact that IMS and Rational Acoustics may "do business together" is not enough to connect Leonard's alleged statements to an overarching IMS purpose.

It is also worth noting that while Plaintiff dedicated a handful of paragraphs in his Amended Complaint discussing interactions he had with Rational Acoustics' employee Hannah Goodine in

---

these women found the Plaintiff so "mesmerizing" that they 'couldn't help themselves." Plaintiff's Am. Compl., ¶22.

[3] Plaintiff claimed in his Opposition that this "statement is untrue," Plaintiff's Opp. Br. at p. 17, n.2, but it came directly out of his own Amended Complaint.

May 2023—weeks prior to the InfoComm trade show in June—Plaintiff never alleged that Ms. Goodine herself was in attendance at the trade show when Leonard made his alleged comments.[4] In fact, Plaintiff altogether failed to identify with whom Leonard allegedly spoke at the trade show in his Amended Complaint—be it Hannah Goodine or any other Rational Acoustics' employee. It was not until his Opposition that Plaintiff alleged for the first time that Leonard made the alleged statements to "management-level employees" of Rational Acoustics. Plaintiff's Opp. Br. at p. 9. Of course, Plaintiff's after-the-fact allegations outside of the four corners of his Amended Complaint should not be given credence. *See Hadnagy v. Moss*, No. 22-3060, 2023 WL 114689, at *2 (E.D. Pa. January 5, 2023) (quoting *Hammond v. City of Phila.*, 2001 WL 823637, at *2 (E.D. Pa. June 29, 2001) ("[a] party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion."). As the Third Circuit recognized, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal citations omitted).

In the end, Plaintiff is asking this Court to make unsupported and inappropriate assumptions in an effort to save his failed claims. Such efforts simply cannot be countenanced. For these reasons alone, Plaintiff's claims against IMS must be dismissed.

### B. Plaintiff has not satisfied his burden with respect to his underlying tort claims

Even if this Court were to determine that Plaintiff adequately plead a claim for vicarious liability against IMS, it matters not if Plaintiff cannot first demonstrate that an actual tort was committed for IMS to be held liable for the same. Much in the same way that Plaintiff seeks the

---

[4] Plaintiff similarly failed to allege what Hannah Goodine's role is with Rational Acoustics, and what the nature of her relationship is with respect to IMS.

mercy of the Court to read into his Amended Complaint facts that simply are not there, Plaintiff similarly seeks reprieve from the Court in his Opposition Brief with respect to his underlying tort claims on account of the fact that he is a *pro se* Plaintiff. In fashioning his argument on the standard of review on Defendants' collective motions to dismiss, Plaintiff makes sure to point out that *pro se* filings are to be construed liberally. Plaintiff's Opp. Br. at p. 7 (citing *Vogt v. Wentzel*, 8 F. 4th 182, 185 (3d Cir. 2021); *Maia v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013). Plaintiff ignores the fact, however, that the *Vogt* Court similarly recognized that "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Vogt v. Wentzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (quoting *Maia v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)). When examining the sufficiency of each of Plaintiff's underlying tort claims, it is clear that he cannot meet this burden.

    **1.  Plaintiff's Opposition fails to save his defamation claims**

Beginning with his defamation claims, Plaintiff contends that even if Leonard's comments were based upon his opinions, those "opinions" are still capable of defamatory meaning. Plaintiff's Opp. Br. at p. 8. Plaintiff specifically argues that Leonard's opinions could have been "understood to imply the existence of undisclosed defamatory facts justifying the opinion," *id.* (quoting *Veno v. Meredith*, 515 A.3d 571, 575 (Pa. Super. Ct. 1986) (internal citations omitted), and that whether a statement qualifies as a true opinion or one that implies the existence of undisclosed derogatory facts is a question of law to be resolved by the court. *Id.* (citing *Green v. Mizner*, 692 A.2d 169, 174 (internal citations omitted).

The problem, of course, is that Plaintiff altogether failed to identify in his Amended Complaint to whom the alleged statements were made, making it impossible to determine *who* could have potentially understood the so-called implication in the first place. Stuck with this

plainly obvious fact, Plaintiff attempted to first inject new facts in his Opposition that are not contained in his Amended Complaint, claiming for the first time that Leonard made the statements to "management-level employees of both Rational Acoustics and ProSoundWeb." Plaintiff's Opp, Br. at p. 9. For the same reasons noted earlier herein, this is simply not permitted. Plaintiff then argues that the so-called recipients of the alleged statements from Rational Acoustics *presumably* knew that he and Leonard "worked closely together." *Id.* There is nothing in Plaintiff's Amended Complaint to suggest that this was the case, and his assumptions about what these unnamed individuals may or may not have known about his relationship with Leonard not are not sufficient enough to overcome his burden. With nothing else upon which to support his defamation claims, Plaintiff makes a broad generalization that "the statements that Mr. Leonard made of me, when heard by the average listener, suggest the existence of some undisclosed facts." *Id.* What the "average listener" would have understood, of course, is simply not the standard.

One additional point is that while Plaintiff denies being a public figure (and similarly denies that the subject matter of Leonard's comments were of public concern), he nevertheless made it a point to note the scope and breadth of his influence in the audio industry and similarly noted the highly sensitive nature of the comments in the wake of the #MeToo movement. By Plaintiff's own admission, he has "published over 50 technical articles and a full length book," has "co-authored a number of peer-reviewed papers," has presented his work "for many professional industry bodies and events," and within five years of creating a podcast, has garnered "over 20,000 downloads per month and over a half a million lifetime downloads." Plaintiff's Opposition Br. at p. 2. All of the foregoing were similarly set forth in Plaintiff's Amended Complaint. *See* Plaintiff's Am, Compl., ¶¶6-8. Plaintiff nevertheless incorrectly accused Defendants of "playing fast and

loose" in suggesting that he was a public figure, which would understandably change the Court's analysis with regard to his defamation claims. Plaintiff's Opp. Br. at p. 10.

Plaintiff is also being disingenuous in his Opposition when he first suggests that the allegations in the Amended Complaint do not relate to a matter of public concern, *id.* at 10, only to then state that the Restatement (Second) of Torts' characterization of serious sexual misconduct is stale and outdated, *id.* at 13,[5] and that the conduct that the #Me Too movement brought to the forefront has caused to "entire entertainment industry—including the audio engineering industry—" to become more "keenly sensitive to issues involving the sexual harassment and sexual abuse of women in the workplace." *Id*. at 14.  Plaintiff simply cannot have it both ways.

### 2. Plaintiff's Opposition cannot take away from the fact that his "business" was not the subject of Leonard's alleged claims

Plaintiff's attempt to justify his commercial disparagement claim in his Opposition is inapposite, as he is unable to establish that his "business" and his "reputation" are one in the same. In support of his argument, Plaintiff once again argues that the "industry" has become more sensitive to accusations of sexual harassment and sexual abuse of women in the workplace, and he ultimately claims that Leonard's alleged comments directly correlate to his suitability as an audio engineer.  Plaintiff's Opposition at 14.  Plaintiff specifically states that it is impossible to "separate the services provided by a business from the business owner," *id.*, after which he cites *Weiser Law Firm, P.C. v. Harlieb*, No. 2:19-cv-02728, 2022 WL 970757 (E.D. Pa. Mar. 31, 2022), a case

---

[5] Notably, Plaintiff fails to cite a single case in his Opposition to support his claim that "in most circles . . . the understanding of what constitutes 'serious sexual misconduct' has evolved." Plaintiff's Opp. Br. at 13.  Indeed, while summarily claiming that the law must be stable, but that "there's no requirement that it be stagnant," Plaintiff cannot point to any legal support to suggest that *his subjective* understanding of what constitutes "serious sexual misconduct" is the current state of the law as opposed to the well-settled Restatement definition still employed by Pennsylvania courts to this day.

which dealt with the named partner of a law firm and the firm itself being accused of corruption and fraud and its billing practices being called into question.

The problem with Plaintiff's argument is essentially two-fold: first, Plaintiff never plead that he was an actual "business owner." Compare that with *Weiser*, in which Weiser himself was a named partner of the firm. Perhaps more problematic for Plaintiff, however, is that in denying the defendants motion to dismiss the commercial disparagement claims in *Weiser*—at least in part—the *Weiser* Court found that the underlying statements attacked the *quality* of the plaintiffs' services. *Weiser*, 2022 WL 970757, at *17; *see*, *also*, *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 924 (3d Cir. 1990) (holding that statements attacking the *quality* of a vendors goods ultimately serve to reduce their marketability). While Plaintiff summarily argues in his Opposition that Leonard's comments directly correlate to his suitability as an audio engineer, there is simply nothing in his Amended Complaint to support that correlation.

### 3. Plaintiff's Opposition asks the Court to infer facts that were not contained in the Amended Complaint

Plaintiff's tortious interference claim is nothing more than the legal equivalent of a Hail Mary, *i.e.*, to have this Court "infer" that he and Defendant Leonard "were close enough that [Plaintiff] disclosed intimate details of his personal life with [Leonard" and that Leonard "knew about [his] actual and prospective business relationships." Plaintiff's Opp. Br. at p. 15. The fact remains that Plaintiff never pled the nature of his relationship with Leonard in his Amended Complaint with specificity, and so the mere fact that Plaintiff invited Leonard to join him as a co-host on his podcast, *id.*, or that they worked together in some capacity does not in and of itself lend to the conclusion that Plaintiff would like this Court to draw. Nor so does the actual substance of Leonard's comments—which Plaintiff self-servingly suggests should be indicative of the nature of their relationship.

Plaintiff's Complaint is equally devoid of sufficient facts to demonstrate that Leonard had "actual knowledge" of any of the alleged contractual relationships that he claims were affected by Leonard's comments. It is well-settled that "[a]ctual knowledge of the contract with which a defendant supposedly interfered is a prerequisite to making out a claim for tortious interference." *Acclaim Sys., Inc. v. Infosys, Ltd.*, 679 F. App'x 207, 211 (3d Cir. 2017).

Plaintiff was ultimately tasked with alleging sufficient facts in his complaint to support his claim of tortious interference.  *See*, *Vogt, supra*, 8 F. 4th at 185 (3d Cir. 2021) (internal citations omitted).  He has failed in that regard, and cannot know look to the Court to fill in the gaps.

### III. CONCLUSION

For these reasons, as well as those set forth in Defendant IMS's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Amended Complaint (Doc. 17-1), Plaintiff's Amended Complaint as to IMS should be dismissed in its entirety, with prejudice.

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

/s/ Alexander Nemiroff
Alexander Nemiroff (PA ID #92250)
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA 19103
(267) 602-2040 (phone)
(215) 253-5017 (fax)
anemiroff@grsm.com
*Attorneys for Defendant*
*IMS Technology Services, Inc.*

Dated: July 29, 2024

## CERTIFICATE OF SERVICE

I certify that on this 29th day of July 2024, Defendant IMS Technology Services, Inc.'s Reply in Further Support of its Motion to Dismiss Plaintiff's Amended Complaint was electronically filed and is available for viewing and downloading from the ECF system by the following:

Michael Lawrence Lombardo
45 Laurel Trail
Monroe, NY 10950
iamthemichaellawrence@gmail.com
*Pro se Plaintiff*

Gregory S. Hyman, Esq.
Kaufman Dolowich LLP
One Liberty Place
1650 Market Street, Suite 4800
Philadelphia, PA 19103
ghyman@kaufmandolowich.com
*Counsel for Defendant Christopher Bryan Leonard*

Dated: July 29, 2024

                                              */s/ Alexander Nemiroff*
                                              Alexander Nemiroff (PA ID. #92250)